## BIRGE–FORBES COMPANY *v.* HEYE.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

No. 76. Argued November 13, 14, 1919.—Decided January 12, 1920.

A judgment for an alien enemy is objectionable only in so far as it may give aid and comfort to the other side in the war. P. 323.

A judgment recovered in the District Court by an alien enemy before he became such, the satisfaction of which was delayed by the other party's appeal until the intervention of war, may properly be reviewed, during the war, and affirmed with directions that the money be paid to the clerk of the trial court to be turned over to the Alien Property Custodian; and a motion to dismiss or suspend the action is correctly denied. *Id.*

Where a broker who became liable for his principal on several arbitration awards sued for their aggregate amount and was given a directed verdict and a judgment against the principal for the part which he

had then paid, and, having paid the remainder, sued again to recover that also, *held,* that the former judgment was conclusive in the second action as to the validity of the awards, it appearing, not only from the petition and judgment, but from other parts of the record of the former case, including the answer, the judge's charge and the opinion of the Circuit Court of Appeals, that the validity of all the awards alike was there in issue and was sustained. P. 323.

In determining whether a former judgment, given upon a directed verdict, involved the same issues of fact as are presented in a second action before the same judge in which both parties submit the point by requests for a peremptory instruction, especial weight attaches to the judge's decision. P. 324.

The objection that the deposition of a plaintiff in the District Court cannot be taken on his own behalf is waived by a stipulation waiving time and notice and allowing the officer to proceed to take and return it on interrogatories. *Id.*

That in the return of foreign depositions the officer commissioned did not put them into the mail and certify to the fact on the envelopes, as required by a state law, is immaterial where the war made compliance impossible and where the officer transmitted them in the only practicable way, though an American consul to the State Department and thence by mail to the clerk. *Id.*

The six months' limitation of the German Civil Code, § 477, on claims for defect of quality in goods sold, does not apply to awards of arbitration based on such claims. P. 325.

In an action to recover amounts paid on defendant's account in Germany, it is not error to take the value of the German mark at par in the absence of evidence that it had depreciated when the plaintiff made the payments. *Id.*

248 Fed. Rep. 636, affirmed.

THE case is stated in the opinion.

*Mr. Henry O. Head,* with whom *Mr. Jesse F. Holt* was on the briefs, for petitioner, made the following points:

The court below should have sustained the motion to abate the suit, and postpone its consideration until the end of the war, the plaintiff being an alien enemy. The principle is illustrated by the discussion in *Hanger* v. *Abbott,* 6 Wall. 532; *Bishop* v. *Jones,* 28 Texas, 294, 316; *Plettenberg, Holthaus & Co.* v. *Kalmon & Co.,* 241 Fed. Rep.

605; *Howes* v. *Chester*, 33 Georgia, 89; and Corpus Juris, 117. In *Owens* v. *Hannay*, 9 Cranch, 180, nothing was said of this matter and the ruling was confined to a question concerning jurors. *Watts, Watts & Co.* v. *Unione Austriaca*, 248 U. S. 9, is direct upon this point.

The acts of Congress do not authorize the taking of the deposition of a party to a law case in the District Court in advance of trial. By the Act of 1906, 34 Stat. 618, competency of witnesses is determined by the law of the State. By the Texas law, Art. 3688, a party is competent as a witness. Section 863, U. S. Rev. Stats., provides for taking depositions *de bene esse* within the United States; but it has been often decided that this does not authorize depositions abroad, and that authority for them must be by *dedimus* obtained from the court, under § 866, to be awarded or withheld in the court's discretion. *United States* v. *Parrott*, Fed. Cas. No. 15,999.

In this case, sole reliance was on the Act of 1892, 27 Stat. 7, which provides that depositions of witnesses in the federal courts may be taken "in the mode prescribed" by the state laws.

As to whether these federal statutes authorize the taking of depositions of parties before the trial, or are confined to ordinary witnesses, there is much difference of opinion. See *Blood* v. *Morrin*, 140 Fed. Rep. 918; *Hanks Dental Assn.* v. *International Tooth Crown Co.*, 194 U. S. 303; *Union Pacific Ry.* v. *Botsford*, 141 U. S. 250; *Ex parte Fisk*, 113 U. S. 724; *Frost* v. *Barber*, 173 Fed. Rep. 847; Simpkins' A Federal Equity Suit, 3d ed., 506 *et seq.* Conceding that this may be done within the United States, the authority could come only through a *dedimus*, or the Act of 1892, *supra*, and with regard to the latter there is an important question whether it gives the right or is restricted to the mode and manner of taking after authority to take has been secured from the court.

The Act of 1892 only admits a deposition, even in this

country, when it has been taken in the mode prescribed by the laws of the State. · It is conceded that the depositions here in question were not returned in compliance with the Texas Statutes. Art. 3660 (2284) (2229). The decision in this case, in conflict with *Pullman Co.* v. *Jordan*, 218 Fed. Rep. 573, is to the effect that the court has the power to substitute another mode which it thinks just as good; notwithstanding the irregularities, the depositions are to be received unless the complaining party is able to show they have been tampered with. This is not in accord with the Texas decisions. *Garner* v. *Cutler*, 28 Texas, 175; *Laird* v. *Ivens*, 45 Texas, 621; *Barber* v. *Geer*, 94 Texas, 581, 584. The construction of the state statute is for the state court. *Smiley* v. *Kansas*, 196 U. S. 447, 455; *Consolidated Rendering Co.* v. *Vermont*, 207 U. S. 541, 551.

All that the stipulation waived was the taking of the deposition upon the original instead of copies of the interrogatories, together with a waiver of the time, notice and copy of the interrogatories, which would have been necessary had they been served upon the defendant in the usual way. Nothing was waived as to the manner of taking and returning the depositions; and to give the agreement the construction given it by the trial judge would absolutely preclude attorneys from making any waiver of any kind with reference to the taking of depositions, as it would subject them to the peril of having evidence used against them which had been taken and returned in the most informal and unreliable way.

All of the authorities agree that a judgment is *res judicata* in a second suit only as to matters that were directly presented and decided in the first, and is not *res judicata* as to matters which might have been decided, but were not in fact passed upon, no matter how conclusive the evidence may have been. *Russell* v. *Place*, 94 U. S. 606; *Landon* v. *Clark*, 221 Fed. Rep. 841; *In re William S. Butler & Co.*, 207 Fed. Rep. 705; *Smith* v. *Mosier*, 169

Fed. Rep. 430, 446; *McAnally* v. *Haynie*, 17 Tex. Civ. App. 521. Here it must be conceded that all that was decided in the first suit was that enough valid awards were made to require the payment by plaintiff of $36,610.96. There was no decision as to any particular awards, or that any awards over that amount were made. Had there been only a single award and various sums depending on this award, the suing for and recovery of a single one of these sums, to which the adjudication of the existence of the award was necessary, would have been an adjudication of its existence in a suit brought for recovery of any or all of the other sums. *Mason Lumber Co.* v. *Buchtel*, 101 U. S. 638. In the instant case, however, there was no single award. On the contrary, there were 160 original awards and 34 appeal awards, making 194 in all. The awards were made in behalf of different persons; on different shipments, arriving at different times; on different claims, where there were different claimants, and by different arbitrators.

Plaintiff's claim was barred by § 477 of the German Code.[1] This was made certain by expert testimony and, if the court is not bound by that, is correct on the face of the statute.

There is no legal presumption that the value of German marks in Texas was their par value. The burden is on him who sues upon an obligation payable in a foreign currency to allege and prove as a part of his case the value of the foreign currency in the currency of the country where the trial is being had. *Kermott* v. *Ayer*, 11 Michigan, 181; *Modawell* v. *Holmes*, 40 Alabama, 391, 405; *Feemster*

---

[1] "The claim of the buyer for rescission of sale or for reduction of purchase price, as well as the claim for damages on account of defects in a guaranteed quality is outlawed in so far as the seller has not fraudulently concealed the defect, in the case of movable things, in six months from the delivery of the goods; in the case of real estate in one year from the transfer of possession. This limitation period can be extended by agreement."

v. *Ringo*, 5 T. B. Mon. 336; *Hogue* v. *Williamson*, 85 Texas, 553; 2 Wharton on Evidence, 3d ed., § 335; 13 Encyc. of Evidence, 425; 23 Cyc. 791, 792.

*Mr. Robert M. Rowland*, with whom *Mr. Newton Hance Hassiter* was on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit by Heye, a cotton broker in Bremen, against the petitioner, a cotton exporter in Texas, to recover sums that Heye had to pay on its account. The payments were made upon cotton sold by Heye as the petitioner's agent, to different buyers, for alleged failure of the cotton to correspond to the description upon which the price was based. In pursuance of the contracts and the rules of the Bremen Cotton Exchange the claims of the buyers were submitted to arbitration, which resulted in awards against the plaintiff for a total of 312,749.30 German marks, alleged to be equal to about $74,820.52. Before the present suit was brought another one had been carried to judgment in the same district, in which that amount was claimed. At that time Heye had paid only $36,610.96 of the awards. The judge directed a verdict for the sum that the plaintiff had paid and another item not now in issue. Heye now has paid the whole and brings this suit to recover the amount of the later payment not embraced in the former judgment. He prevailed in the District Court, and the judgment was affirmed with a modification as to payment by the Circuit Court of Appeals. 248 Fed. Rep. 636. 160 C. C. A. 536. The main question on the merits is whether the former judgment was conclusive as to the validity of the awards, but that upon which the certiorari was granted was a preliminary one, as is shown by the fact that certiorari was denied in the former suit, 234 U. S. 759. After the case had been

taken to the Circuit Court of Appeals a motion was made to dismiss or suspend the suit on the ground that Heye had become an alien enemy by reason of the declaration of war between Germany and the United States. The Circuit Court of Appeals, however, affirmed the judgment with the modification that it should be paid to the clerk of the trial court and by him turned over to the Alien Property Custodian, with further details not material here.

Upon the last-mentioned question, although it seemed proper that it should be set at rest, we can feel no doubt. The plaintiff had got his judgment before war was declared, and the defendant, the petitioner, had delayed the collection of it by taking the case up. Such a case was disposed of without discussion by Chief Justice Marshall speaking for the Court in *Owens* v. *Hannay*, 9 Cranch, 180. *Kershaw* v. *Kelsey*, 100 Massachusetts, 561, 564. There is nothing "mysteriously noxious" (*Coolidge* v. *Inglee*, 13 Massachusetts, 26, 37) in a judgment for an alien enemy. Objection to it in these days goes only so far as it would give aid and comfort to the other side. *Hanger* v. *Abbott*, 6 Wall. 532, 536. *M'Connell* v. *Hector*, 3 B. & P. 113, 114. Such aid and comfort were prevented by the provision that the sum recovered should be paid over to the Alien Property Custodian, and the judgment in this respect was correct. When the alien enemy is defendant justice to him may require the suspension of the case. *Watts, Watts & Co.* v. *Unione Austriaca di Navigazione*, 248 U. S. 9, 22.

On the merits the first question is whether the former judgment was conclusive as to the validity of the awards, assuming them to have been identified as the same that were sued upon in the former case. Taking merely the former declaration and judgment it could not be said with certainty that some of the awards might not have been held invalid and that the defendant had not satisfied the

whole obligation found to exist. But we have before us the fact that the Court directed a verdict and the charge. From the latter, as also from the answer, apart from a general denial, it appears that the awards were dealt with as a whole and that the objections to them were general. The objections were overruled, and the Court assumed that the awards were obligatory, but cut down the amount to be recovered to the sum that had been paid. The case went to the Circuit Court of Appeals and the same things appear in the report of the case there. 212 Fed. Rep. 112. 128 C. C. A. 628. (Certiorari denied. 234 U. S. 759.) In the present case both parties moved the Court to direct a verdict. *Beuttell* v. *Magone*, 157 U. S. 154, 157. *Empire State Cattle Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 210 U. S. 1, 8. Taking that and the fact that the same judge seems to have presided in both suits into account we should be slow to disturb his decision that the issue was determined in the former one if we felt more doubt than we do. But we are satisfied the decision of the two Courts below was right.

We shall deal summarily with two or three highly technical arguments urged against the affirmation of the judgment. One is that the depositions of Heye and a witness were not returned as required by the Texas statute providing for taking them, with a suggestion that, as Heye was a party, his deposition could not be taken at all. As to the latter point it is to be noticed that it did not present an attempt to fish for information from the opposite party and that an agreement was made that "time, notice and copy are hereby waived," and that the "officer may proceed to take and return the depositions of the witness on the original direct and cross interrogatories, but commission is not waived." Whatever may be the general rule, (as to which see *Blood* v. *Morrin*, 140 Fed. Rep. 918,) we think that this objection is not fairly open. As to the mode of return not having followed strictly the Texas

statute, because the officer to whom the commission was directed did not put the depositions into the mail and certify on the envelopes that he had done so, a sufficient answer is that that course was impossible owing to the war, and that the officer did transmit the depositions in the only practicable way. He gave them to an American consul and had them transmitted to the Department of State and then through the mail to the clerk. The integrity of the depositions is not questioned, the statute was complied with in substance, and justice is not to be defeated now by a matter of the barest form.

We see no error in the finding that § 477 of the German Civil Code did not bar the claim. Assuming the question to be open the Court was warranted in finding that a six months' limitation to claims for defect of quality did not apply where the claims had been submitted to arbitration and passed upon. The same is true with regard to the taking the value of the German mark at par in the absence of evidence that it had depreciated at the time of the plaintiff's payments. On the whole case our conclusion is that the judgment should be affirmed.

*Judgment affirmed.*