BENJAMIN S. GUINNESS and Others, Respondents, *v.* PHŒNIX
ASSURANCE COMPANY, LIMITED, OF LONDON, Appellant.

First Department, April 29, 1921.

Appeal — failure to raise question at trial — action by pledgees
of marine insurance certificates — right of resident of this country
to recover from British corporation under policy insuring property
of German subject — state of war in country in which corporation
organized as affecting right to recover on insurance contract in
neutral country where company authorized to do business —
recovery against corporation of friendly government where excess
of amount will go to enemy — payment of excess to Alien Property
Custodian — recovery of expenses incurred defending proceeding
before prize court — practical construction by parties of contract
of insurance.

The question whether the plaintiffs suing as pledgees of marine insurance
certificates had an insurable interest in the property insured, not having
been raised at the trial, will not be considered on appeal.

In an action brought by plaintiffs as pledgees of certain certificates of
marine insurance which included war risk clauses and provided against
capture, seizure, etc., it appeared that the defendant was a British cor-
poration lawfully doing business in this country as a foreign corporation;
that the shipper was a copartnership consisting of several persons, residents
of Germany, and having only one private partner residing in the United
States; that certain lumber was delivered to a steamer for transportation
to Sicily via Hamburg, for which a bill of lading was received, and that
another shipment was delivered for transportation to Rotterdam. Both
shipments were made to one of the copartners residing in Germany. The
policies issued contained clauses which insured against the risk of capture
and condemnation as prizes. After the issuance of such certificates of
insurance war was declared by England against Germany. Both of
the vessels sailed from the United States and while on the ocean were
directed by their owners to proceed to Queenstown, Ireland, where they
were seized as prizes and condemnation proceedings were instituted and
the cargoes condemned. The insurance certificates were indorsed in
blank and delivered to the plaintiffs. *Held*, that as this country was not
at war with Germany at the time of these transactions, the rights accruing
to the residents of this country could not be forfeited or construed by any
laws of Great Britain under whose sovereignty the defendant corporation
was organized.

It is not objectionable that any amount over and above the sum secured
by the pledge is recovered in behalf of the German copartnership, since
any excess recovered would be paid over to the Alien Property Custodian,

and hence such transaction would not be open to the objection that aid and comfort were given the enemy.

It was proper to allow the expenses in defending the condemnation proceedings before the prize court, since the war risk clause contained a provision not to abandon in case of capture, seizure and detention until after condemnation of property insured, nor until notice of said condemnation is given to the insuring company, which provision is equivalent to the " sue and labor " clause ·usually found in contracts for marine insurance.

Moreover, the resistance to the condemnation proceedings before the British court made at the request and with the co-operation of the attorneys for the defendant insurance company and in their behalf, as well as in behalf of the plaintiffs, constituted a practical construction of the rights and duties of the plaintiffs, so that a recovery for the expenses is directly within the terms of the contract of insurance.

APPEAL by the defendant, Phœnix Assurance Company, Limited, of London, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 27th day of May, 1920, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the same day, as amended by an order entered in said clerk's office on the 11th day of June, 1920, denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

*Herbert Barry* of counsel [*Barry, Wainwright, Thacher & Symmers*, attorneys], for the appellant.

*Alexander B. Siegel* of counsel [*Arthur B. Brenner* with him on the brief; *Van Vorst, Marshall & Smith*, attorneys], for the respondents.

SMITH, J.:

This action is brought by the plaintiffs as pledgees of certain certificates of marine insurance issued by the defendant, which included war risk clauses which provided against capture, seizure or destruction by men of war, by letters· of marque, by takings at sea, arrests, restraints and detainments of kings, princes and people, authorized by and in prosecution of hostilities between belligerent nations. The action is brought upon thirteen certificates issued by the defendant of which twelve certificates cover parcels of lumber upon the steamship *Miramichi*, and one parcel on the steamship *Belgia*.

The defendant is a company organized under the laws of Great Britain, but is lawfully doing business in this country as a foreign corporation duly authorized thereto. The shippers of the lumber were a copartnership doing business under the name of Hugo Forchheimer. The partnership consists of several persons who were residents of Germany. One partner resided in the United States.

Hugo Forchheimer on July 8, 1914, delivered to the steamer *Belgia*, at New Orleans, La., certain lumber for transportation to Catania, Sicily, via Hamburg, and received a bill of lading therefor. About July 15, 1914, a bill of exchange, the bill of lading and invoice for the lumber were delivered to plaintiffs by Hugo Forchheimer. On August 1, 1914, the defendant issued to Hugo Forchheimer a certificate of. insurance which contained certain clauses which covered the insured against the risk of capture and condemnation as a prize. This certificate was indorsed by Hugo Forchheimer, and transmitted to the plaintiffs August 6, 1914.

On July 28, 1914, Hugo Forchheimer delivered certain lots of lumber to the steamship *Miramichi* for shipment to Rotterdam and received bills of lading therefor, each containing a provision: "Notify Hugo Forchheimer, Frankfort, Germany." The bills of lading and invoices for that lumber were transmitted to the plaintiffs about July 28, 1914, the date of their issuance. On the same day, July 28, 1914, the defendant issued a policy of insurance for each shipment as appears by the certificate of insurance issued by the defendant August 4, 1914, to take the place of the said "policy." The certificates each contained clauses which covered the insured against the risk of capture and condemnation as a prize. These transfers to plaintiffs were to secure payment of moneys theretofore advanced.

On the same day, August fourth, but after the issuance of the certificates of insurance, war was declared by England against Germany. Prior to August 4, 1914, both of the vessels named above sailed from the United States and while on the ocean after war had been declared they were directed by their owners to proceed to Queenstown, Ireland, where prior to August 31, 1914, the vessels and cargoes were seized

as prizes and proceedings for condemnation were instituted and the cargoes were condemned as prizes about December 2, 1915. On or about August 29, 1914, these last certificates of insurance, indorsed in blank by Hugo Forchheimer, were delivered by his representative to the plaintiffs. On September 5, 1914, a paper purporting to assign the lumber to the plaintiffs was executed and sent to plaintiffs by Hugo Forchheimer.

The certificates of insurance were forms used in all business in this country. F. Herrmann & Co. were managers of the defendant in New York having charge of business written in this country, and E. T. Barry & Co. were general agents at New Orleans, La., and the forms above mentioned used in this instance had the names of the managers as well as of E. T. Barry & Co. printed on them. These certificates were only valid when countersigned by E. T. Barry & Co.

The plaintiffs have three other causes of action. Two of them were for expenses in defending the condemnation proceedings before the Prize Court in Great Britain, and the third for $2,500 possible future expenses. This last cause of action was abandoned before the trial. The judgment directed by the court was for the full amount of the thirteen certificates of deposit and for the expenses incurred in defending the condemnation proceedings hereinbefore mentioned.

The first question raised by the appellant in its brief is that the plaintiffs had no insurable interest in the property insured. This question was not raised, however, at the trial and we do not deem it necessary to consider it here. If the question had been raised upon the trial the plaintiffs might have made further proof as to their rights as pledgees of such policies or certificates to secure moneys theretofore advanced upon the cargoes which were in fact insured. It is unnecessary to cite authorities, however, to the proposition that a defendant must by proper request at the Trial Term urge the objections which he may have to the plaintiff's recovery and cannot for the first time raise such questions in an appellate court, especially as this defense was not pleaded and where the defendant might have shown other facts which would have made the defense unavailing.

The second question raised by the appellant is as to the

right of residents of this country to recover from a British corporation under a policy insuring property of a German subject against war risk, where the property was seized by the British after war was declared between Great Britain and Germany. This defense was dismissed at the trial and we are of opinion that the defendant has no cause of complaint as against this ruling. This British company had its main office in this country in New York city, its general agents were here. It had an office in New Orleans, from which point this lumber was shipped. It was authorized to do business in New York and also in Louisiana. The contract was made in this country. The insurance was payable here. Contracts by such a corporation having authority to do business in this country, here made and to be here performed, are held to be domestic contracts to be governed by our laws and not by the laws of Great Britain. We were not at war with Germany at the time of these transactions, and rights at least accruing to the residents of this country cannot be forfeited or construed by any laws of Great Britain under whose sovereignty the defendant corporation was organized. (*Morgan* v. *Mutual Benefit Life Ins. Co.*, 189 N. Y. 447; Fletcher Corp. § 5722; Morawetz Corp. [2d ed.] § 967; *Boehme* v. *Rall*, 51 N. J. Eq. 541–549; *Pairpoint Mfg. Co.* v. *Watch Co.*, 161 Penn. St. 17; *White* v. *Howard*, 38 Conn. 342; *Warren* v. *First National Bank of Columbus*, 149 Ill. 9; *Martine* v. *International Life Insurance Society*, 53 N. Y. 339.)

It is further contended, however, by the defendant that even though the plaintiffs may sue to recover the amount of money due to them secured by this pledge, the action cannot be maintained because the pledgees have recovered the full amount of the insurance certificates, and any part thereof over and above the amount secured by pledge is recovered in behalf of the German copartnership, Germany being at war with Great Britain at the time of the seizure. In *Birge-Forbes Co.* v. *Heye* (251 U. S. 317) Mr. Justice HOLMES says: "There is nothing 'mysteriously noxious' * * * in a judgment for an alien enemy. Objection to it in these days goes only so far as it would give aid and comfort to the other side. [Citing authorities.] Such aid and comfort were prevented by the provision that the sum recovered should be paid over to the Alien

Property Custodian, and the judgment in this respect was correct. When the alien enemy is defendant justice to him may require the suspension of the case." (Citing authorities.) In the case at bar, however, within the account presented by the plaintiffs, the judgment recovered does not equal the amount for which the certificates were held in pledge so that any sum recovered here will belong to the plaintiffs who are residents of this country, and no part thereof will be collected for the benefit of the subjects of Germany. Further, the war between Germany and England has now ceased. Subjects of Germany may now bring action for any debt owing by a British subject, and even if this German firm would be entitled to any of the proceeds which it might theoretically use for the benefit of the foreign government, this country has full protection in the right of the Alien Property Custodian to take and hold the proceeds of the recovery until peace shall have been declared.

When we consider the reason of the rule forbidding a suit by an alien enemy, this judgment should not, in any event, be now reversed, when the full proceeds of this judgment will pass to the plaintiffs, residents of this country.

The judgment is further challenged in the allowance to the plaintiffs of expenses in defending the condemnation proceedings before the British Prize Court. It is not questioned that if this policy contained a "sue and labor" clause, this expense would constitute a proper claim against the defendant. In the war risk clause is contained this provision: " Warranted not to abandon in case of capture, seizure or detention until after condemnation of property insured, nor until 90 days after notice of said condemnation is given to this company." This clause is, as I read it, equivalent to the "sue and labor" clause usually found in contracts for marine insurance, and if not, the resistance to this condemnation was made at the request and with the co-operation of the attorneys for the insurance company and in their behalf, as well as in behalf of the plaintiffs, which constitutes in my judgment a practical construction of the rights and duties of the plaintiffs in defending these condemnation proceedings before the British court, so that the recovery for the expenses thereof is, as I interpret the contract, directly within its terms.

For the reasons thus indicated, we are of opinion that the verdict directed by the Trial Term was authorized and the judgment thereupon entered and the order appealed from should be affirmed, with costs.

CLARKE, P. J., DOWLING, PAGE and GREENBAUM, JJ., concur.

Judgment and order affirmed, with costs.