STATE ex Rel. BIERING, Relator, *v*. DISTRICT COURT ET AL., Respondents.

(No. 8445.)

(Submitted June 18, 1943. Decided August 3, 1943.)

[140 Pac. (2d) 583.]

176

*Mr. Ralph J. Anderson,* for Relator,

*Mr. T. B. Weir* and *Mr. J. H. Higgins,* for Respondents, *Mr. Weir* argued the cause orally.

HONORABLE LYMAN H. BENNETT, District Judge, sitting in place of Mr. Justice Adair, disqualified, delivered the opinion of the court.

Relator herein seeks annulment of an order made by the District Court of the Fourteenth Judicial District, in and for the County of Meagher, dismissing a petition filed by him for the revocation of letters testamentary theretofore issued to Aubrey Barlow Ringling as executrix of the estate of Richard Theodore Ringling, deceased, and for other relief.

Decedent, Richard Theodore Ringling, died August 31, 1931. Thereafter and on September 26, 1931, letters testamentary were issued to Aubrey Barlow Ringling. Probate proceedings went forward and in due course it became established by judgment that relator herein, E. A. M. Biering, was a general creditor of the estate of said decedent. It appears that a considerable balance remains due relator upon his claim from said estate though from time to time payments were made to him.

On October 11, 1939, relator filed in the lower court his petition as mentioned above. Issue was joined upon the matters set out in said petition late in the year 1940. In March, 1942, an amended answer was filed by said executrix, and in May of that year she filed a written motion for an order dismissing relator's said petition on the grounds that relator was an alien enemy or

an ally of an alien enemy and thereby prohibited from prosecuting the proceeding. After filing of affidavits relating to relator's status, arguments were had upon the motion to dismiss and thereafter the lower court made an order granting the motion, filing therewith a memorandum which discloses that the reason for granting the motion was that the Act of Congress known as the "Trading with the Enemy Act," for brevity hereinafter referred to as the Act, 50 U. S. C. A. Appendix, sec. 1 et seq., forbade the prosecution thereof.

In his petition, which was dismissed, relator, together with allegations upon which he undoubtedly sought to obtain certain relief, the propriety of which in a probate proceeding we here express no opinion upon, set out matters which brought the instant proceeding within the purview of Chapter 122 of the Code of Civil Procedure, Revised Codes of Montana, 1935. Since the lower court granted the motion upon the ground that the Act forbade relator from prosecuting the same we need not discuss the original petition for revocation in detail further than to say that it would appear that if the issues should be determinable in his favor, relator should be entitled to relief if he is in a position to demand it. Suffice it to say, it is self-evident that the probate proceedings have been protracted many years beyond what would ordinarily appear to have been sufficient to have brought them to a close. This is not intended as a criticism of the trial judge whose order is now before us. His connection with the proceeding is comparatively recent and he appears to have acted promptly upon all matters finally submitted to him.

In so far as the case has been presented to us there does not appear to be any question but that if the prohibitions of the Act control, relator falls within them. That is to say, there is nothing before us which would permit us to find that relator is not an alien enemy or an ally of an alien enemy with whom we have been at war since at least the time when the motion to dismiss the petition for revocation of letters testamentary was filed.

Respondents' only suggestion as to the propriety of the exercise of supervisory control is contained in the following state-

ment, "Because of the importance of this matter the Court's attention is called to the question of whether or not the order below can be construed as an order refusing to revoke letters testamentary and therefore appealable under section 9731(3) R. C. 1935." The order complained of by relator, herein, is not an order refusing to revoke letters and was not an appealable order.

We, therefore, address ourselves to the determinative question: Was the lower court in error in dismissing relator's petition below for the reason that he is an alien enemy or an ally of such?

In support of his contention that the lower court erred, relator takes the position that his proceeding in the court below was not forbidden either by the "law of nations" or the terms of the Act. He contends that his position is like unto that of an alien enemy who had obtained a judgment prior to becoming such alien enemy and cites *Birge-Forbes Co.* v. *Heye*, 251 U. S. 317, 40 S. Ct. 160, 64 L. Ed. 286, and *Kershaw* v. *Kelsey*, 100 Mass. 561, 97 Am. Dec. 124, 1 Am. Rep. 142, in support of the view that such a judgment creditor may enforce his judgment. He asserts that the spirit of both the "law of nations" and the Act are confined to safeguarding the interests of the nation in order to prevent the "giving of aid and comfort to the enemy" and that the provisions of law as they relate to the taking over of property belonging to enemy aliens by the Alien Property Custodian are sufficient protection in such a case as the one with which we are concerned, citing *Burgess* v. *Gilchrist*, 123 W. Va. 727, 17 S. E. (2d) 804, 138 A. L. R. 676, in support thereof. He also endeavors to distinguish the proceeding below, which was in probate, from a suit or action at law or in equity, arguing that the terms of the Act do not forbid the proceeding, and cites cases which are based upon the differences as they bear upon the question of the jurisdiction of the District Courts sitting in probate.

Respondents say that since relator has not shown that he holds a license, pursuant to executive order, to do business as an alien enemy—with discussion of the terms of executive orders which they think applicable—the terms of the Act preclude him from

proceeding. While adversion is made to other provisions of the Act, in the main respondents' contention revolves around that portion of section 7 (b) which reads: "Nothing in this Act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of an enemy prior to the end of the war, except as provided in section ten hereof * * *." (Said section ten deals only with matters not related to the instant proceeding.) They cite *Ex parte Colonna,* 314 U. S. 510, 62 S. Ct. 373, 86 L. Ed. 379; *Rothbarth* v. *Herzfeld,* 179 App. Div. 865, 167 N. Y. Supp. 199; Id. 223, N. Y. 578, 119 N. E. 1075; *In re Willer's Estate,* 179 Misc. 169, 37 N. Y. Supp. (2d) 906; *H. P. Drewry, S. A. R. L.* v. *Onassis,* 266 App. Div. 292, 42 N. Y. Supp. (2d) 74, and several notes appearing in 143 A. L. R. 1515.

Before proceeding to the discussion of the phases of the matter before us which we deem to be controlling we mention the fact that nothing will be said upon the question as to whether the proceeding below falls within the category of a "suit or action at law or in equity" other than to comment that it might be that if it is not such, relator was not prohibited from maintaining it in any event. Be that as it may, we think the lower court was in error as we shall point out.

Whatever may have been the rule and the reasons therefor ██ ██ prior to the enactment of the Act, the attitude or policy of this nation relating to property interests located within the United States belonging to alien enemies became fixed by that Act, so as "to mitigate the rules of law which prohibit all intercourse between the citizens of warring nations, and to permit under careful safeguards and restrictions, certain kinds of business to be carried on." (See *Ex parte Kawato,* 317 U. S. 69, 63 S. Ct. 115, 119, 87 L. Ed. 58). In passing we might add, that while we do not deem the rule thereof pertinent to or controlling upon our questions, the rule which was adopted by the *Kawato* case had been announced by this court in *State ex rel. Gaspar* v. *District Court,* 113 Mont. 318, 124 Pac. (2d) 1010. In *Birge-Forbes Co.* v. *Heye,* supra, [251 U. S. 317, 40 S. Ct. 161, 64 L. Ed.

286] the court said that the sole objection to giving judgment for an alien enemy "goes only so far as it would give aid and comfort to the other side."

From the authorities cited to us and others which we have examined we take it to be the rule that an alien enemy who is a non-resident of this country may not *institute* any action in any court within the United States after the commencement of a state of war with the country of which he is a citizen or subject, and that any action instituted by such an alien prior to the coming about of a state of war is subject to suspension for the duration of the war except *possibly* for interlocutory relief to maintain status quo.

On the other hand both the "law of nations" and the very terms of the Act seem to us to give to the alien enemy his day in court whenever he is brought within its jurisdiction. The very paragraph of the Act cited above provides, "That an enemy or ally of an enemy may defend by counsel any suit in equity or action at law which may be brought against him."

As early as the duration of the Civil War the Supreme Court of the United States said: "Whatever may be the extent of the disability of an alien enemy to sue in the courts of the hostile country, [citing cases] it is clear that he is liable to be sued, and this carries with it the right to use all the means and appliances of defense. In Bacon's Abridgment, (title Alien, D.) it is said: 'For as an alien may be sued at law, and may have process to compel the appearance of his witnesses, so he may have the benefit of a discovery.' " (*McVeigh* v. *United States,* 11 Wall. 259, 267, 20 L. Ed. 80, 81.) That case was one where the defendant, an alien enemy, was originally brought before the court by "substituted service." See, also, *Watts, Watts & Co.* v. *Unione Austriaca di Navigazione,* 248 U. S. 9, 39 S. Ct. 1, 63 L. Ed. 100, 3 A. L. R. 323, decided after the adoption of the original Act, where it was indicated that an alien enemy defendant has the right to obtain extraordinary process to protect his interests during the pendency of any action which may affect him adversely.

We think that both the letter and the spirit of the law confine any prohibition of prosecution to the *institution and carrying forward* of whatever may be included within the terms of the Act, and we are convinced that the petition which was dismissed by the lower court was only incidental to the probate proceeding which was instituted and is being carried forward by an executor, and was defensive in nature as to the acts of the legal custodian of the property, and as such is permitted. See Words and Phrases on definition of the word "prosecution." (34 Words and Phrases, Perm. Ed., p. 622.)

A probate proceeding is in the nature of a proceeding *in rem,* ▉ ▉ and the entire world is brought before the court by the process provided therefor. (See *Monk* v. *Morgan,* 49 Cal. App. 154, 192 Pac. 1042.) The estate itself is taken into *custodia legis.* (See *In re Dewar's Estate,* 10 Mont. 422, 25 Pac. 1025.) No execution may be issued upon a judgment against an executor or administrator secured upon a claim for money. (Sec. 10185, Rev. Codes, 1935.) The assets of an estate are thus secured as against the entire world, in the hands of an executor or administrator, at least as to the estate's liability upon such a claim as is involved in the proceeding before us. If an alien enemy is ever entitled to be heard in our courts it seems clear to us that it would be when his established interests are being adversely affected by an officer of the court which has the responsibility protecting such interests. That it is the duty of the court below to protect the interests of relator can not be gainsaid. (See *In re Jennings' Estate,* 74 Mont. 449, 457, 241 Pac. 648.)

And on this last point we advert to a statutory rule which ▉ ▉ itself would seem sufficient to require the annulment of the order of dismissal. The duty of a court sitting in probate to investigate the activities of an executor or administrator is such that it is obliged to suspend such officer pending investigation "Whenever the judge * * * has reason to believe, from his own knowledge, or from credible information, that any executor or administrator has wasted, embezzled, or mismanaged, or is about to waste or embezzle, the property of the estate committed to his

charge, * * * or has neglected to perform any act as such executor or administrator * * *.'' (Sec. 10124, Rev. Codes, 1935.) With a verified petition before him asserting such long delay and non-payment of established claims, we think the lower court was in duty bound to proceed with the investigation regardless of the status of the claimant as an alien enemy or ally thereof, always bearing in mind that whenever the time for presentation of claims against an estate has expired it is the duty of the executor or administrator to proceed with the utmost expedition to wind up the affairs of the estate unless sufficient reasons appear compelling a different course of action. (See *In re Jennings' Estate*, supra.) We might say that in our opinion a whim or desire of an heir or an executor or administrator to utilize the probate structure to carry on a business or venture which was being carried on by a decedent does not furnish an excuse from the duty to close an estate with the utmost expedition. It may even be incumbent upon such a legal custodian to proceed to close even though delay might benefit those entitled unless those interested all consent to the delay.

We feel impelled to mention a request made in relator's brief ▆▆▆ that we direct the lower court to require a liquidation of the estate and payment of relator's claim. Notwithstanding what has been said anent delays and other matters which might be construed as an indication of our views on the merits of relator's contentions as they may be presented to the lower court, we do not deem it to be within our power in this proceeding to substitute our discretion as to what should be done in the probate of the estate of decedent. The only step we think it proper to take is to require the lower court to proceed to hear the petition in so far as it presents matters requiring attention in probate.

Because it would seem to hold contrary to the views we have expressed we mention that we cannot agree with the holding of the case cited by respondents, *In re Willer's Estate*, supra. Incidentally we might say that that case was the only one cited by respondents which approached such a state of facts as confront us.

Neither do we believe that the investigation of te probate proceedings which may result from our holding will give "aid and comfort to the enemy." The provisions of the Act relating to the taking over of property of an alien enemy by the Alien Property Custodian seem ample to us for this purpose, and we are not persuaded by the suggestion that before the executrix or her successor may pay a claim to an alien enemy she must obtain a license to pay over or become liable criminally.

Taking the view which we do, we do not think any "executive order" can deprive even an alien enemy of his day in court. If there is a possibility of mischief resulting from such holding, it would, in our opinion, require further legislation by a duly constituted legislative body to prevent it.

Let a peremptory writ issue forthwith directing respondents to annul the order dismissing relator's petition, to proceed with the investigation of the conditions obtaining in the *Matter of the Estate of Richard Theodore Ringling*, and to take all such steps as the fact conditions require, looking to the protection of the interests of relator and all persons concerned therein.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON and MORRIS concur.

Cause taken to Supreme Court of the United States by Writ of Certiorari, August 24, 1943.