Opinion
PARAS, Acting P. J.
The State of California (State) appeals from á judgment of the Sacramento County Superior Court decreeing the escheated estate of William Edwards be paid over to certain claimant heirs, less statutory charges and inheritance taxes.
Edwards died intestate in Los Angeles on September 25, 1942, leaving a net estate of $21,149.43. We now know that all of his then surviving heirs were citizens and residents of Germany and Austria.[1] Accordingly, pursuant to Probate Code section 1026 (repealed in 1974), they succeeded to the estate upon death, subject to the condition that a “nonresident alien who becomes entitled to property by succession must appear and demand the property within five years from the time of succession; otherwise, his rights are barred and the property shall be disposed of as escheated property.” (See Estate of Sorenson (1955) 44 Cal.2d 306, 307 [281 P.2d 870].)
None of the heirs appeared within the five-year period. On October 30, 1947, the probate court (Los Angeles County Superior Court) escheated the estate (the $21,149.43) to the State of California for lack of known heirs, pursuant to Probate Code section 1027.
*888 On January 25, 1949, Anna Theresia Franziska Benirschke initiated the proceeding which ultimately led to this appeal. She filed in the Sacramento County Superior Court a “Petition to Recover Funds from State Treasury.” The petition did not specifically state Anna’s nationality but alleged that she was bom and resided in Austria. As the State virtually concedes, Anna’s petition was timely because the five-year period prescribed by Probate Code section 1026 was tolled during the German occupation of Austria in World War II. The Trading With the Enemy Act (50 U.S.C.A. appen. § 7) prevented residents of enemy-occupied countries from maintaining actions to recover property in the United States. (See Estate of Caravas (1952) 40 Cal.2d 33, 38-42 [250 P.2d 593].) Although the end of Austria’s occupation is not discussed in the briefs, we take judicial notice that Austria was still occupied five years before Anna’s petition.
On October 8, 1953, apparently because of problems in interpreting the Trading With the Enemy Act, the parties (Anna and the State) filed a stipulation that trial of the proceeding be postponed and that it not be subject to dismissal for failure to bring to trial except on written notice terminating the stipulation.
The next activity in the Sacramento proceeding occurred on February 24, 1956, when Brunhilde Fleischmann Mueller and Hans Fleischmann, German residents, filed a “Petition for Leave to Intervene.” To this petition was attached as exhibit “A” a copy of a proposed “Petition to Recover Funds From State Treasury” in which Mueller and Fleischmann sought to recover the one-seventh share claimed by them as niece and nephew of Edwards. Then on May 8, 1956, a second “Petition for Leave to Intervene” was filed by two additional German citizens, Irmtraut Hildegard Schuppler and Kurt Kroymann as administrator of the estate of Theresia Antonia Benirschke Wolf. They were represented by the attorney who also represented Mueller and Fleischmann. This petition alleged simply that Schuppler and Wolf were “heirs at law of Williams Edwards;” in actuality, Schuppler is the sole heir of Wolf, who postdeceased Edwards.
Again as the State appears to concede, these petitions too were timely, because the disability of German citizens to sue in United States courts was not removed until October 19, 1951, when passage of Congressional Joint Resolution No. 289 (65 Stat. 451) terminated the state of war *889 between the United States and Germany. (Farbenfabriken Bayer A. G. v. Sterling Drug (3d Cir. 1958) 251 F.2d 300.)[2]
On May 20, 1957, after a hearing, the trial court filed a minute order and written opinion denying the petitions to intervene on the ground that the joint resolution had not removed the disability of German nationals to sue. But on September 6, 1957, all parties (Mueller, Fleischmann, Schuppler, Kroymann, Anna and the State) apparently decided that the joint resolution had removed the disability, for they stipulated “that any order heretofore made denying plaintiff in intervention the right to intervene may be set aside, and that the trial court may consider the petition to intervene as if no order denying the same had heretofore been made.” No further action of any kind was ever taken by these four would-be interveners other than Schuppler, or by their attorney; and they are not parties to this appeal.
The next activity took place on July 25, 1974, when the State served on all counsel and filed a “Notice of Termination of Stipulation Extending Time for Trial.” This brought no response of record either from Anna or from Mueller, Fleischmann and Kroymann. But on May 18, 1976, eight new claimants plus one of the original interveners, Schuppler,[3] all represented by new counsel, filed a notice of motion for leave to intervene. This motion was granted. One of these interveners (Schuppler) claimed derivatively through Anna, the original plaintiff, as well as in her own right as daughter of Wolf; others claimed from original would-be interveners; still others claimed rights independent of those who had previously appeared. The petition in intervention (pursuant to the order granting leave to file it) was filed on July 28, 1976.
*890 An answer to petition in intervention was filed by the State on September 15, 1976; it denied the claims and set forth as separate defenses that the claims were barred (1) because of the provisions of Probate Code section 1027 by the lapse of five years from the date of escheat, and (2) by former Probate Code section 1026 (repealed in 1974) by the lapse of five years from the date of decedent’s death, the claimants all being nonresident aliens.
The matter was tried before the court without a jury and a decision was rendered on May 12, 1977, the court stating: “The Court is of the view that the various interventions heretofore allowed herein, whether by stipulation or order, have the necessary effect of having all of the interveners before the Court in the same position, that is, all of the interveners are entitled to whatever benefits and standing accrued as the result of the original petition to recover escheated funds filed in 1949, and that therefore each of the parties now before the Court is entitled to participate in the amounts and proportions as shown by the Proofs of Heirship heretofore filed.”
Findings of fact and conclusions of law were requested, and in due course the court signed formal findings of fact and conclusions of law, and judgment, on July 13, 1977. The judgment orders payment by the State to each of the nine interveners in stated shares and also orders the State to hold certain shares for the benefit of named heirs who have not as yet appeared and claimed them.
I
The State concedes that any claimant who claims derivatively through the original plaintiff, Anna, may be awarded his or her proper share of Anna’s interest in the estate. According to the court’s findings of fact, only one claimant, Irmtraut Hildegard Schuppler, also known as Traute Schuppler, claims through Anna (as sole beneficiary in Anna’s will). Therefore, the court’s order as to her was proper with respect to Anna’s one-seventh share.
II
As to the interveners claiming derivatively through the original would-be interveners, the State contends that the requirement of Probate Code section 1026 to “appear and demand” was not satisfied by the petitions requesting authorization to intervene. We disagree. No particu *891 lar form of appearance and demand is specified in the code section. The petitions for leave to intervene, coupled with proposed forms of petition to recover funds on deposit in the state treasury, constitute an appearance. The terminology of the petitions can only be viewed as a demand sufficient to satisfy the code. (See Estate of Caravas, supra, 40 Cal.2d at p. 38, which holds that all that is required is that a legal proceeding be commenced within the five-year period.) As stated in A. E. Bell Corp. v. Bell View Oil Synd. (1938) 24 Cal.App.2d 587, 614 [76 P.2d 167], “all of the parties were before the court preceding the expiration of the one hundred eighty days [the period of limitations] .... The Union Oil Company had appeared, filed a petition for leave to intervene, but as actual leave was not granted by the court until after the expiration of the one hundred eighty days, the right of the Union Oil Company could not be prejudiced by the failure of the court to act upon the application prior to the expiration of the one hundred eighty days. The Union Oil Company had appeared in the case within the one hundred eighty days, and that we deem sufficient.”
Accordingly, the claim of Schuppler, as one of the original would-be interveners, was properly accepted by the trial court as to her mother’s one-seventh share, in addition to Anna’s one-seventh share. The claim of Viktoria Fleischmann, sole heir of original would-be intervener Hans Fleischmann (who postdeceased Edwards) was also properly accepted on this ground as to Hans’ one-fourteenth share.
Ill
All of the remaining claimants derive their rights from heirs who never themselves appeared in any manner in the action.. The first appearance of such claimants was on May 18, 1976, long after the five years of both Probate Code section 1026 and Probate Code section 1027 had expired (even after crediting the tolling period). Their claims are barred.
The argument that the stipulation extending time for trial, to which neither these claimants nor the heirs from whom they claim were parties, nevertheless applied to them, is pointless; even if the stipulation were given such effect, it would not alter the fact that there was no appearance and claim within the period of limitations. Moreover, the stipulation cannot be so interpreted. It was entered into between the State and Anna, who in her petition very clearly showed that she was entitled to one-seventh of the estate only. These claimants are not in any way *892 successors to any claim of Anna and cannot claim the vicarious benefit of her own stipulation.
The petitions of these other claimants to intervene should have been denied. (See generally 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 213 et seq., p. 1885 et seq.) It is well settled that “An order granting leave to intervene is not separately appealable . . . and is therefore reviewable only on appeal from the final judgment.” (3 Witkin, Cal. Procedure, supra, § 200, p. 1873.) (Italics in original.)
Plaintiffs assert that the propriety of the order permitting intervention has not been raised in this appeal. We disagree. The State’s brief does not challenge particular orders, but rather focuses on a single issue, “whether the . . . claims are barred by the statute of limitations, . . .” This same defense was raised in response to the petitions to intervene and continuously thereafter. There has never been any doubt as to the State’s challenge of the right to intervene as well as the right to recover the funds. Indeed the two issues are inseparable. The issue was properly raised.[4]
IV
The question remains as to the disposition of the one-fourteenth share of the estate to which Brunhilde Fleischmann Mueller was originally entitled. It will be recalled that Brunhilde and Hans Fleischmann were children of Augusta Benirschke, predeceased sister of Edwards. Hans and Brunhilde did “appeal and claim,” but both died before trial. As noted (see part II, ante), Viktoria Fleischmann, heir of Hans, pursued his share and we have affirmed its award to her. But no one came forth to claim and pursue Brunhilde’s share, although the record discloses that Ilse Maria Mueller, Brunhilde’s daughter and sole heir, became entitled to it. Despite Ilse Mueller’s absence from the litigation, the trial court’s judgment directed that the State hold the one-fourteenth share “for the benefit of Ilse Maria Mueller.”
*893 In this respect the court erred. The only appearance in the action as to Brunhilde’s share of the estate was by Brunhilde herself. As we have held, it satisfied the appear and claim requirements of Probate Code sections 1026 and 1027. But when Brunhilde died, the action could no longer proceed as to her, and it became necessary that someone be substituted for her. (Code Civ. Proc., § 385, subd. (a).) This was not done, and to the extent that the judgment purported to benefit Brunhilde or her nonappearing heirs, it is void. (De Leonis v. Walsh (1903) 140 Cal. 175 [73 P. 813]; Boyd v. Lancaster (1939) 32 Cal.App.2d 574 [90 P.2d 317]; see 3 Witkin, Cal. Procedure, supra, § 233, p. 1907.)
The judgment is affirmed as to Schuppler to the extent of two-sevenths of the estate and as to Viktoria to the extent of. one-fourteenth. In all other respects and as to all other interests, it is reversed with directions to enter judgment for the State. Each side is to bear its own costs.
Evans, J., and Reynoso, J., concurred.

The Edwards estate divides into seven equal shares because of seven siblings who either survived Edwards or predeceased him leaving their own issue surviving him. As of Edwards death, the heirs were: 1. Hans Fleischmann and Brunhilde Fleischmann Mueller, children of predeceased sister Augusta Benirschke; 2. Hertha Benirschke Rebentisch and Harald August Willibald Benirschke, children of predeceased brother Karl Johann Benirschke; 3. Anna Theresia Franziska Benirschke; 4. Adolph Benirschke; 5. Maximilian August Benirschke; 6. Teresia Antonia Benirschke Wolf; 7. Friedrich Franz Benirschke.

Actually, the Farbenfabriken court suggested that it did not reach this question, stating, “Whether or not Farben could have maintained its suit during the period from December 31, 1946 to October 19 or 21, 1951, is a question with which we need not concern ourselves for the suit at bar was commenced on September 28, 1955.” (251 F.2d at p. 303.) But elsewhere the court states that by the joint resolution of 1951, “Congress intended to terminate the state of war so as to remove the disqualifications of German nationals as enemies . . . .” (251 F.2d at p. 304.) In view of the fact that the trial court in this very case, relying on other appellate decisions prior to Farbenfabriken, decided that the disability was not removed even by the joint resolution (as will appear infra), we conclude that it certainly was not removed until the joint resolution. The state does not argue otherwise.

These nine interveners are: Johannes Rotter, Viktoria Fleischmann, Hertha Rebentisch, Huberta Benirschke, Traute Schuppler, Ilse Noelke, Kurt Benirschke, Lottie Forst, and Lieselette Benirschke as parent and natural guardian of Jurgen Benirschke.

This reasoning does not apply to the original petitions for leave to intervene because they were filed within the five-year period of limitations, as tolled, and therefore can be treated as independent actions. Under our liberal rules of pleading, relief will not be denied because of formal defects where, as here, the pleading is sufficient to put the defendant on notice of the plaintiffs’ claims. (See generally Campbell v. Genshlea (1919) 180 Cal. 213, 217 [180 P. 336]; Christiansen v. Cram (1909) 156 Cal. 633, 636 [105 P. 950]; Penrose v. Winter (1901) 135 Cal. 289 [67 P. 772]; Fleischmann v. Lotito (1936) 6 Cal.2d 365 [57 P.2d 992].)