## ZITTMAN v. McGRATH, ATTORNEY GENERAL, SUCCESSOR TO THE ALIEN PROPERTY CUSTODIAN.

NO. 299.

Argued February 28, 1951.—Decided May 28, 1951.

472

*Joseph M. Cohen* argued the cause and filed a brief for petitioner in No. 299.

*Henry I. Fillman* argued the cause for petitioner in No. 315. With him on the brief was *Otto C. Sommerich.*

*Ralph S. Spritzer* argued the cause for respondent. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Baynton, James L. Morrisson* and *George B. Searls.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

These are companion cases to Nos. 298 and 314, *ante,* p. 446. Here, the petitioners attached the accounts of the Deutsche Reichsbank with the Federal Reserve Bank of New York. The attachments were levied at the same time as those levied on the Chase Bank accounts, and were also followed by state court actions against the Reichsbank, culminating in default judgments that have not been satisfied because of the Federal Government's freezing program. The Alien Property Custodian served on the Federal Reserve Bank Vesting Orders similar to those served on the Chase Bank in Nos. 298 and 314. But he also served on the Federal Reserve Bank a "turnover directive" describing the specific property which he required to be "turned over to the undersigned to be held, administered and accounted for as provided by law," and calling attention to the protection which § 5 (b) of the Trading With the Enemy Act gives for compliance. No such directive was served on the Chase Bank in the companion cases. The Federal Reserve Bank refused to release to him the portion of the accounts that had been subjected to the attachment levies. The Custodian has been sustained by the courts below, as he was in Nos. 298 and 314, on the basis of *Propper* v. *Clark,* 337 U. S. 472.[1]

---

[1] 82 F. Supp. 740; 182 F. 2d 349.

All that we have said in subdivisions numbered I, II, and III in Nos. 298 and 314, respecting the nature of the rights acquired under New York law by an attaching creditor, and the position occupied by those rights consistent with the freezing program, is equally applicable to the attachments here involved. The important distinction between these cases and their companions is in the Vesting Orders issued by the Custodian and the nature of the judgment he has sought in each. The only order issued to the Chase Bank was a "right, title, and interest" Vesting Order, which, as we understand the Custodian to concede, put him in the place of the German banks and left open to judicial determination whether any valid interests as against anyone were created by the attachments. In the litigation involving the Chase Bank, the Custodian sought a declaratory judgment that the freezing program precluded attaching creditors from obtaining any interest in the blocked property good as against the debtors.

In these cases the Custodian pursued a different course, not only in that he served on the Federal Reserve Bank a "turnover directive," but also in that the relief asked in this case omits any request for a declaration that the attachments are invalid. He asks a decree only that the Custodian is "entitled to possession" of the accounts in their entirety. In other words, in the actions involving the Chase Bank the Custodian stepped into the shoes of the German banks and sought to free their titles of the state liens; here he seeks to step into the shoes of the Federal Reserve Bank as possessor of the credits and funds, leaving unadjudicated the effect of such substitution of custody upon the attaching creditors' rights.

While the statute under which the funds are to be "held, administered and accounted for" authorizes the vesting of such foreign-owned property in the Custodian and its administration "in the interest of and for the benefit of

the United States," [2] it is not a confiscation measure, but a liquidation measure for the protection of American creditors. It provides for the filing and proving of claims and states that the funds "shall be equitably applied" for the payment of debts.[3] If the Custodian disallows a claim, or if he disallows a claim of priority where claims exceed assets, the claimant may seek relief in the United States District Court for the District of Columbia.[4] The transfer of possession of these funds does not purport to work any automatic deprivation of rights of any class of creditors, but takes over the estate for administration.

In view of these facts, we decide, and decide only, that the Custodian has power to possess himself of these funds and to administer them. To hold otherwise would be incompatible with the federal program. The consequences, if any, that flow from the substitution of the Custodian in place of the Bank as holder of the funds, upon rights derived from valid state court judgments secured by attachment, are not ripe for determination. They may never come into controversy. All questions as to the petitioners' claims, judgments, or priorities are reserved for decision in the proceedings prescribed by statute.

The power of the United States to take and administer the fund is paramount. The judgment below must, therefore, be

*Affirmed.*

Mr. Justice Clark took no part in the consideration or decision of these cases.

---

[2] Trading With the Enemy Act of 1917, 40 Stat. 411, as amended, § 5 (b) (1), 55 Stat. 839.

[3] § 34 (a), 60 Stat. 925.

[4] *Id.* § 34 (e), (f).