**ORVIS et al. v. McGRATH, Atty. Gen.**

No. 256, Docket 22340.

United States Court of Appeals
Second Circuit.

Argued June 4, 1952.

Decided June 30, 1952.

Harold I. Baynton, Asst. Atty. Gen., Myles J. Lane, U. S. Atty. for Southern District of New York, New York City (James D. Hill, George B. Searls and Westley W. Silvian, Washington, D. C., of counsel), for appellant.

Baer, Marks, Friedman, Berliner & Klein, New York City (Donald Marks and Arthur M. Bullowa, New York City, of counsel), for appellees.

Joseph M. Cohen, New York City, for Leo Zittman, amicus curiæ.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. The Custodian argues that the court below had no jurisdiction of this suit because of § 34(f), 50 U.S.C.A.Appendix, § 34(f), which provides for judicial review in the District of Columbia exclusively. But § 34(i) says that no person asserting "any interest, right, or title" in property acquired by the Custodian shall be barred from proceeding for its return pursuant to the Act by reason of any proceeding he may have brought pursuant to § 34. Ac-

cordingly, if the plaintiff had an "interest, right, or title", he could properly maintain his suit in the court below, pursuant to § 9(a). The question, then, is whether the attachment created has such an "interest, right, or title", i. e., a lien conferring priority over other creditors, although the Custodian took control under a res vesting order.

2. The trial judge apparently thought the answer self-evident. He said merely: "Motion denied. See Zittman v. McGrath, 341 U.S. 446 [71 S.Ct. 832, 95 L.Ed. 1096]." We think, however, that a reading of that Supreme Court opinion (which we shall call Zittman No. 1) and of its companion, 341 U.S. 471, 71 S.Ct. 846, 95 L.Ed. 1112 (which we shall call Zittman No. 2), discloses that this question the Supreme Court deliberately left undecided.[1]

■ 3. Undoubtedly, Congress has the power to authorize the nullification of all attachment liens obtained after a freezing order (on the analogy of the effect of bankruptcy on preferences). We must enquire whether Congress gave such authority.

■ As noted in Zittman No. 2, § 34(a) provides that property "vested" in the Custodian "shall be *equitably applied* by the Custodian * * * to the payment" of the alien debtor's debts.[2] Section 34(d) says that payments shall be pro rata if the available money is "insufficient for the satisfaction of all claims allowed by the Custodian". Section 34(g) establishes an order of priority of claims, but accords no priority to attachment liens over ordinary claims. In Zittman No. 2, the Court stated that, under a res vesting order, the Custodian "takes over the estate for administration", as a "liquidation measure for the protection of American creditors."[3] The words "equi-

table," "administration" and "liquidation" reinforce the idea of equality and suggest repugnance to the notion that the race should be to the swift among the creditors. The absence of any provision according priority to attachment liens indicates an intention to deprive them of any preferential position. Moreover, since in some states an attachment does not create a lien, the granting of such preferences will result in a lack of uniformity in an area which is peculiarly of national concern. Justices Reed and Burton apparently reached a conclusion adverse to the contention made by the plaintiffs in the instant case.[4]

On the other hand, Douglas, J., said he could "find nothing in the Act which warrants leveling the good faith lien claimant to the unsecured status of the others", adding (in a note): "The priority of debt claims contained in § 34(g), 60 Stat. 925, 928, does not purport to deal with creditors preferred by reason of a lien lawfully acquired in judicial proceedings."[5] However, that brings up this question: Does a lien procured in an "unlicensed" attachment suit give rise to a lien acquired "lawfully" as against the Custodian when he makes a res vesting order? The answer, we think, turns on the meaning and validity of Treasury Ruling No. 12, 7 F.R. 2291.

■ That Ruling purported to be issued pursuant to the freezing order, Executive Order No. 8389 (as amended). The Ruling, effective on April 21, 1942—and thus antedating the attachment suit here—provided that any unlicensed transfer of property in a blocked account after the effective date of the Executive Order was null and void, and defined "transfer" to include the issuance or levy of any attachment; paragraph 4 added that no attachment could confer a greater interest in prop-

---

1. Zittman No. 1 held merely that an unlicensed attachment like that here can be a valid lien as between (a) the attaching creditor and (b) either the enemy debtor or the Custodian if he chooses—by a "right, title and interest" order—to step into the debtor's shoes. Zittman No. 2 held that a res vesting order does not "work any automatic" destruction of an unlicensed attachment lien.

2. 341 U.S. at page 474, 71 S.Ct. at page 847. Emphasis added.

3. 341 U.S. at page 474, 71 S.Ct. at page 847.

4. See 341 U.S. at page 465 et seq., 71 S. Ct. 832. They relied, in part, on *Propper v. Clark*, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480.

5. 341 U.S. at pages 464, 465, 71 S.Ct. at page 842.

erty "than the owner of such property could create or confer by voluntary act prior to the issuance of an appropriate license," although it would be valid as between the parties for the purpose of determining the rights or liabilities litigated. We think that, if valid, this Ruling deprives an unlicensed attachment lien of any preferential position in the event of a res vesting order. We think further that this Ruling was within the scope of the Executive Order, and that both that Order and the Ruling were authorized by § 5(b) of the Act. Cf. Clark v. Propper, 2 Cir., 169 F.2d 324, 327; Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480.

Reversed.