ORVIS ET AL. *v.* BROWNELL, ATTORNEY GEN-
ERAL, SUCCESSOR TO THE ALIEN
PROPERTY CUSTODIAN.

No. 404.   Argued February 4, 1953.—Decided March 16, 1953.

*Donald Marks* argued the cause and filed a brief for petitioners.

*James L. Morrisson* argued the cause for respondent. With him on the brief were *Solicitor General Cummings, Assistant Attorney General Kirks, James D. Hill* and *George B. Searls.*

Briefs of *amici curiae* supporting petitioners were filed by *Joseph M. Cohen* for Zittman; and *Henry I. Fillman* for McCarthy.

MR. JUSTICE JACKSON delivered the opinion of the Court.

This suit, under § 9 (a) of the Trading with the Enemy Act,[1] asks a decree that petitioners have an interest in vested property of Japanese nationals in the hands of the Alien Property Custodian, that he holds the prop-

---

[1] 50 U. S. C. App. § 9 (a): "Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States . . . may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may order the payment . . . or delivery to said claimant of the money or other property so held by the Alien Property Custodian . . . or of the interest therein to which the President shall determine said claimant is entitled . . . . If the President shall not so order within sixty days after the filing of such application or if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides . . . to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment . . . or delivery to said claimant of the money or other property so held by the Alien Property Custodian . . . ."

erty subject to petitioners' attachment lien and must satisfy their judgment. The controlling facts are not in controversy. The Japanese nationals involved were indebted to petitioners, while a third party, Anderson, Clayton & Co., was indebted to those Japanese. On June 14, 1941, Executive Order No. 8389 became effective as to Japan, and it blocked all transfers of evidences of debt or interests in property of Japanese citizens. Thereafter, petitioners commenced suit against the Japanese debtors in a New York state court and, without obtaining a license therefor, attached the Anderson, Clayton & Co. credit on June 25, 1943. Judgment was obtained, whereupon petitioners applied for a federal license to permit Anderson, Clayton & Co. to pay it. The application was refused.

Meanwhile, on June 27, 1947, the Custodian vested the Anderson, Clayton & Co. credit by a *res* vesting order and it was paid over to the Custodian. Petitioners filed notice of their present claim under § 9 (a) of the Act for return of an interest in vested property, which was treated as another application for a retroactive license. The claim was dismissed insofar as it was a claim under § 9 (a), based on interest in property, but was left and still is pending as a claim for payment of a debt under § 34 of the Act.

The difference between what was denied and what was left pending is important, for if the attachment and judgment create an interest in the property which can be retrieved from the Custodian under § 9 (a), the judgment will be paid in full. On the other hand, if it is only an allowable debt under § 34, unless granted a priority it apparently will be paid only in part, since it appears that claims against the Japanese nationals considerably exceed the funds in the Custodian's hands.

Both parties moved for judgment on the pleadings. The District Court granted petitioners' motion and de-

nied that of the respondent. The Court of Appeals reversed.[2] We granted certiorari.[3]

The petitioning judgment creditors here are in the same position as were those in the declaratory judgment action of *Zittman* v. *McGrath,* 341 U. S. 446, in that they have judgments and attachment liens valid under New York law as against their enemy national debtors and as against those whose credits were attached. In the first *Zittman* case, we held that the executive freezing order did not prevent such an attachment from creating rights between the judgment creditor and the enemy debtor whom the Custodian had elected to succeed. In the second *Zittman* case, however, we held that where the Custodian elected to vest the *res* for administration purposes he was entitled to possession, even as against such an attaching creditor whose lien would have been valid under New York law. We are now called upon to decide a question not presented by these earlier cases: whether the freezing order prevented a creditor from thereafter acquiring by attachment an "interest, right, or title" in property such as will support a claim against the Custodian under § 9 (a) of the Act.[4] We hold that the freezing order did have such an effect and that, while it recognized attachment liens insofar as they determined

---

[2] 198 F. 2d 708.

[3] 344 U. S. 902.

[4] Executive Order No. 8389, April 10, 1940, 5 Fed. Reg. 1400, as amended by Executive Order No. 8785, June 14, 1941, 6 Fed. Reg. 2897: ". . . All of the following transactions are prohibited, except as specifically authorized by the Secretary of the Treasury by means of . . . licenses, . . . if . . . such transactions involve property in which any foreign country designated in this Order, or any national thereof, has at any time on or since the effective date of this Order had any interest of any nature whatsoever, direct or indirect: . . . E. All transfers, withdrawals or exportations of, or dealings in, any evidences of indebtedness or evidences of ownership of property by any person within the United States . . . ."

relationships between creditor and enemy debtor, it did not permit the transfer of a property interest in the blocked funds which could be asserted against the Custodian.

The order forbids "transfers of credit" and "transfers of any evidences of indebtedness or evidences of ownership of property," and General Ruling No. 12[5] specifies that this prohibition extends to the creation of a lien. Admittedly, if the Japanese had made a voluntary unlicensed assignment, it could have created no property interest. Admittedly also, if Anderson, Clayton & Co., with or without the consent of its Japanese creditors but without federal license, had paid over the fund to these petitioners, they would obtain no such interest. We cannot doubt that these administrative interpretations apply to the present transaction and that the general assent by the Government to state attachment procedures which we recited in the *Zittman* opinion did not extend so far as to recognize them as effecting a transfer. To so interpret it would ignore the express conditions on which the consent was extended. Realistically, these reservations deprive the assent of much substance; but that should have been apparent on its face to those who chose to litigate. The opportunity to settle their accounts with the enemy debtor was all that the permission to attach granted.

Petitioners challenge the statutory authorization for such an order. It is argued that the sole purpose of the Trading with the Enemy Act was to prevent transfers under duress of funds credited to residents of occupied countries. Though this was one of the aims of the Act,

---

[5] General Ruling No. 12, April 21, 1942, § 131.12 (e) (1), 7 Fed. Reg. 2991: "The term 'transfer' shall mean any actual or purported act or transaction, . . . and without limitation upon the foregoing shall include . . . the creation or transfer of any lien . . . ."

its language extends the authorization much farther.[6] The validity of the freezing order as an implementation of the Trading with the Enemy Act was sustained in *Propper* v. *Clark*, 337 U. S. 472, and we adhere to that holding. Petitioners also contend that the Custodian was not given power, similar to that of a bankruptcy court, to "annul" liens and attachments. But the question is not whether a lien, concededly valid because obtained prior to the freezing order, may be "annulled" by the Custodian, but rather whether the freezing order prevented the subsequent acquisition, by attachment, of such a property interest as the Custodian would have to recognize under § 9 of the Act. Because of the supremacy of the Federal Government on matters within its competence, the freezing order, while permitting an attachment for jurisdictional and other state law purposes, prevented the subsequent acquisition of a lien which would bind the Custodian under § 9.

Section 34 of the Act provides liquidation procedures by which debt claims may be allowed and priorities established. The petitioners' claim is pending for that purpose. Judicial review is provided. It would be premature to decide how the Custodian must treat this claim in a general accounting and settlement of his trust, since this proceeding seeks only to forestall such settlement of this claim.

The parties are in disagreement as to the course pursued by the Custodian in allowing payment of attachment creditors. In view of the statutory mandate that

---

[6] 50 U. S. C. App. § 5 (b) (B): ". . . [T]he President may . . . investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest . . . ."

the assets shall be "equitably applied by the Custodian in accordance with the provisions of this section," each case, to some extent, may rest on its own facts. We do not find it either necessary or possible to inquire whether other similar claims have been allowed on the grounds mentioned in § 9, and, if so, whether they were properly allowed by the Custodian.

Petitioners by their unlicensed attachment could obtain no "interest, right, or title" in this fund recoverable against the Custodian. He may proceed to administer the vested assets according to § 34 of the Act and to consider petitioners' claim and its status thereunder, subject to the review therein provided. The suit under § 9 (a), however, must fail.

*Judgment affirmed.*

MR. JUSTICE CLARK took no part in the consideration or decision of this case.

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE FRANKFURTER concurs, dissenting.

Section 34 (a) of the Trading With the Enemy Act, 60 Stat. 925, provides that property vested in the Alien Property Custodian "shall be equitably applied by the Custodian in accordance with the provisions of this section to the payment of debts owed by the person who owned such property" prior to the vesting in the Custodian. A priority of debt claims is provided by § 34 (g).[1] But, un-

[1] "Debt claims shall be paid in the following order of priority: (1) Wage and salary claims, not to exceed $600; (2) claims entitled to priority under sections 191 and 193 of title 31 of the United States Code, except as provided in subsection (h) hereof; (3) all other claims for services rendered, for expenses incurred in connection with such services, for rent, for goods and materials delivered to the debtor, and for payments made to the debtor for goods or services not received by the claimant; (4) all other debt claims. No

like § 60 of the Bankruptcy Act (52 Stat. 869), it does not purport to outlaw liens acquired within certain periods or under specified conditions. Section 34 (i) indeed recognizes that there may be liens asserted against the Custodian; [2] and it in no way qualifies them by reason of the time of their acquisition. The House Report (H. R. Rep. No. 2398, 79th Cong., 2d Sess., p. 15) was quite explicit as respects the protection which § 34 (i) was designed to give secured creditors and creditors claiming a lien:

"Protection of a secured creditor or a creditor claiming a lien is afforded by the proviso in subsection (i). Such a claimant may proceed as a general creditor, without thereby waiving his security. In addition or alternatively, he may file a claim or suit as a title claimant for return of his security interest in the property or for just compensation in respect of that interest, in which event his recovery would be reduced, as in the case of any other such plaintiff, to the extent of any debt claim payment made to him (or to any other claimant, if his claim as a title claimant was not filed in time to hold up debt claim payments). It is believed that this arrangement is preferable to provision of a separate special procedure for secured creditors."

payment shall be made to claimants within a subordinate class unless the money from which, in accordance with subsection (d) hereof, payment may be made permits payment in full of all allowed claims in every prior class."

[2] ". . . no person asserting any interest, right, or title in any property or interest or proceeds acquired by the Alien Property Custodian, shall be barred from proceeding pursuant to this Act for the return thereof, by reason of any proceeding which he may have brought pursuant to this section; nor shall any security interest asserted by the creditor in any such property or interest or proceeds be deemed to have been waived solely by reason of such proceeding."

Thus, as the Custodian concedes, a secured or lien creditor can proceed under § 9 (a) for recovery of a property interest (see *Markham* v. *Cabell,* 326 U. S. 404; *Clark* v. *Uebersee Finanz-Korp.,* 332 U. S. 480), or under § 34 for recovery of a debt, or both.

We have been meticulous in protecting the right of the Custodian to *possession* of assets which have been vested. *Propper* v. *Clark,* 337 U. S. 472; *Lyon* v. *Singer,* 339 U. S. 841; *Zittman* v. *McGrath,* 341 U. S. 471. But we have also been meticulous to respect liens and preferences obtained in judicial or administrative proceedings so long as the enforcement of those liens did not interfere with the Custodian's administration. *Lyon* v. *Singer, supra; Zittman* v. *McGrath,* 341 U. S. 446.

Yet why the concern in protecting the lien or the preference if there was no possibility of asserting it? Certainly it was not necessary to establish the lien to prove the claim. Certainly it was not necessary to establish the lien in order to have the right to apply for a license. "As against the German debtors," we said in *Zittman* v. *McGrath,* 341 U. S. 446, 463–464, "the attachments and the judgments they secure are valid under New York law, and cannot be cancelled or annulled under a Vesting Order by which the Custodian takes over only the right, title, and interest of those debtors in the accounts." If we meant what we said, the claimants (in the position of petitioners in the present case) were more than unsecured creditors. They had lawful liens that could be proved in the federal proceedings. A lien implies some priority. We reserved the question as to its nature. But if we meant no more than what is now granted, the dissenting opinion in *Zittman* v. *McGrath, supra,* at 465, should have been made the law then rather than now.