ARCHIBALD BROWN, Appellant, *v.* HUGO STINNES CORPORATION, Respondent.

First Department, May 26, 1953.

*Herbert Plaut* of counsel (*Scribner & Miller,* attorneys), for appellant.

*Paul W. Williams* of counsel (*James B. Henry, Jr.,* with him on the brief; *Cahill, Gordon, Zachry & Reindel,* attorneys), for respondent.

BREITEL, J.   Plaintiff appeals from dismissal of his complaint on the ground that the court was without jurisdiction, that he had no capacity to sue and that the causes of action did not accrue against defendant because of disability under Federal law.   Plaintiff is a resident American holder of overdue notes issued by defendant.   Plaintiff sues at law to recover on the notes.   Defendant is a Maryland corporation, most of the stock of which was owned by enemy aliens.   Involved is the effect of the taking over by the Office of Alien Property, and its predecessor agency, of the supervision and direction of the corporation (not only the vesting of its stock owned by enemy aliens).

Plaintiff contends that he is not prevented from pursuing his claim to judgment in a judicial proceeding although he concedes that he may not interfere, without Federal license, with the property of the corporation so long as its supervision is in the Office of Alien Property.   Defendant contends that the Federal supervision prevents any interference, without Federal license first obtained, with the business or operations of the corporation, which includes the bringing of any actions to enforce creditors' claims against the corporation which arose before Federal supervision began.

It is our view that plaintiff is entitled to bring this action, and that, therefore, the complaint was improperly dismissed.

In considering Federal exercises of authority with respect to economic transactions between nationals of different countries it merits distinction between (1) a freezing order, which regulates transactions without the taking of possession or title to assets, (2) a vesting order, which confers possession of and possessory title in specific property or assets in the Office of Alien Property, and (3) a supervisory order which confers the power of regulation of an enterprise or going concern in the Office of Alien Property.   It is the latter type of order which was issued with respect to defendant corporation.

A supervisory order is issued under subdivision (b) of section 5 of the Trading With the Enemy Act (U. S. Code, tit. 50, Appendix, § 5, subd. [b]). That section provides that under certain circumstances the President through a designated agency may

" (A) investigate, regulate, or prohibit, any transactions in foreign exchange, transfers of credit or payments between, by, through, or to any banking institution, and the importing, exporting, hoarding, melting, or earmarking of gold or silver coin or bullion, currency or securities, and

" (B) investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest, by any person, or with respect to any property, subject to the jurisdiction of the United States   *   *   *."

Following the enactment of the statute Executive Order No. 9095 was adopted (as amd. by Executive Order No. 9193; U. S. Code, tit. 50, Appendix, § 6, note). This conferred power on the Federal agency (originally, the Alien Property Custodian and thereafter and now the Office of Alien Property under the Attorney General) to direct, manage, supervise, control or vest " any business enterprise " directly or indirectly owned or controlled by an enemy country or nationals thereof. This executive order is stated by defendant corporation to be the basic order as to vesting and supervision under which the Federal agency subsequently acted in taking over defendant corporation.

Pursuant to the statute general regulations have been adopted by the Office of Alien Property relating to supervisory powers. These in effect prohibit, unless authority is specifically obtained, any transaction, transfers or other dealings in or relating to any property or interest that has been vested, or as to which a supervisory order has been issued (Code of Fed. Reg., tit. 8, § 505.1).

The stock of defendant corporation owned by aliens, namely 53% of the common stock of the corporation, was on September 2, 1943, vested in the Federal agency. On that day, a supervisory order was issued taking over the direction, management, supervision and control of defendant corporation. It prohibited any transactions without authorization of the Federal agency.

It is immediately apparent that neither the statute, the executive order, the regulations issued pursuant to the statute, nor the specific supervisory orders mention specifically the bringing of any action against the supervised enterprise, nor are the remedies of creditors mentioned directly or indirectly, generally or in particular. Before so fundamental a right as that to sue in the courts is taken away, in this case from an American resident, it would seem that express language should be required, and that the area for implication of so drastic a limitation be narrowly prescribed. In any event, it would be unjust and needless to prevent suit against defendant corporation in an action in personam, so long as the property and assets of defendant corporation are not affected by transfer of title, possession or use.

This position is strengthened by an examination of the cases that have considered an a fortiori application to the problem, namely, that of an attachment lien obtained by creditors against assets " frozen " by the Federal agency (as distinguished from a business enterprise supervised by the Federal agency as is involved here). The Court of Appeals and the Supreme Court of the United States have consistently held that an attachment creditor may have his attachment lien against specific assets frozen by the Federal agency, so long as transfer of title or possession or other interference with use of the assets is not involved (*Polish Relief Comm.* v. *Banca Nationala a Rumaniei,* 288 N. Y. 332; *Zittman* v. *McGrath,* 341 U. S. 446; *Zittman* v. *McGrath,* 341 U. S. 471). In the *Polish Relief Commission* case it was pointed out that the purpose of the Federal action was to prevent enemy nationals from benefiting from assets subject to a " freezing order " which prohibited all transactions with respect to such assets; that the order did not forbid attachments; and that in any event the assets cannot be affected as to title or possession unless a Federal license is first obtained. Also suggested was the need of an in rem remedy for creditors who could not obtain in personam jurisdiction. In the *Zittman* case, the Supreme Court commented with approval on the holding in the *Polish Relief Commission* case and applied the same reasoning to a New York creditor's attachment of assets frozen by the Federal agency. The need for a quasi in rem remedy was emphasized as was advantage to the Government of having creditors' claims judicially settled. The court went on to say: " This result, as we have indicated, in no way impairs federal control over alien property, since the petitioners admit that

they cannot secure payment from the attached frozen funds without a license from the Custodian. The case is, therefore, more nearly like *Lyon* v. *Singer*, 339 U. S. 841, 842, where this Court said: ' We accept the New York court's determination that under New York law these claims arose from transactions in New York and were entitled to a preference. Since the New York court conditioned enforcement of the claims upon licensing by. the Alien Property Custodian, federal control over alien property remains undiminished '." (341 U. S. 446, 464, *supra.*)

This situation is no different. The assets of defendant corporation can under no circumstances be affected by any proceeding in this action, unless the license of the Federal agency is first obtained. (The Federal agency has in fact refused to pay plaintiff's notes.) The action being in personam, its relation to the assets of defendant corporation is more remote than that of an attachment would be. Moreover, an attachment lien does not lie except as it be in an action or if it be the initial step in beginning an action. It would be ludicrous to hold that a creditor who could bring an attachment action in rem would be debarred from proceeding in personam.

In a recent case, the Supreme Court passed on the limited effect of an attachment lien and of any judgment that might be obtained thereon. It was held that, if unlicensed, neither the attachment nor any judgment obtained thereon gave plaintiff any status as to the " interest, right, or title " in the vested assets. He might, if he wished, press his judgment as a claim before the Federal agency under section 34 of the Trading With the Enemy Act (*Orvis* v. *Brownell,* 345 U. S. 183). This certainly provides the last proof, if any be needed, that the present action can yield no judgment or order that interferes with actual supervision of defendant corporation, or its property, by the Federal agency, unless that agency first consents. It is also interesting to note that the *Orvis* case, unlike the *Polish Relief Commission* case and the *Zittman* case, involved vested, not " frozen " assets.

In considering the issue presented we have followed the construction (an arguable one) urged by defendant corporation, namely, that section 34 of the Trading With the Enemy Act provides a liquidation procedure and judicial review for claims only with respect to claims against specific assets vested in the Federal agency. Consequently, we do not rely on the reservation of the right to sue contained in that section. On the other hand, as a matter of statutory construction, we think it appro-

priate to note that when the legislative draftsman sought to speak of judicial actions and remedies, he was at no loss for words. Moreover, it is very significant that a claims procedure should have been detailed with respect to claims against vested assets, but none set forth with respect to claims against a business enterprise being supervised.

The practical considerations do not dictate any different result. Defendant corporation argues that plaintiff may by this action obtain a preference. The answer is that he will not obtain a preference or any other right or priority to specific assets. He will reduce his claim, if he succeeds, to judgment. While defendant corporation successfully refutes plaintiff's claim that he will be jeopardized by a Statute of Limitations issue, it is still true that the policy of statutes of repose will not be served if plaintiff cannot translate his right into a judgment and smoke out any defenses on the merits that he can. Moreover, plaintiff is entitled to perfect his status so that in the event of release of the defendant corporation from supervision he is in a position to take following steps. We note, too, that while on the argument there was suggestion of national interest in preventing this suit, neither Special Term nor this court has had presented any formal or official representations that the pendency of this action will adversely affect the national interest.

Wherever we turn it becomes apparent that there was no intention expressed, that none may be implied, and that no useful purpose will be served, in holding that Federal law prohibits this action, or disables this defendant from being sued.

The order of Special Term should be reversed and the motion to dismiss the complaint should be denied.

CALLAHAN and BERGAN, JJ., concur with BREITEL, J.; DORE, J. P., dissents and votes to affirm.

Judgment and order reversed, with costs to the appellant and the motion to dismiss the complaint denied. [See *post,* p. 683.]