**William P. ROGERS, Attorney General of the United States, as Successor to the Alien Property Custodian, Plaintiff-Appellee,**

v.

**LA SALLE STEEL COMPANY, a Corporation, Defendant-Appellant.**

**No. 12003.**

United States Court of Appeals
Seventh Circuit.

Dec. 9, 1957.

Rehearing Denied Feb. 7, 1958.

Vincent O'Brien, Chicago, Ill., Richard L. Wattling, Chicago, Ill., for appellant.

Max Wilfand, Attorney, Department of Justice, Washington, D. C., Hon. Robert Tieken, U. S. Atty., Chicago, Ill., Dallas S. Townsend, Asst. Atty. Gen., George B. Searls, Irwin A. Seibel, Attorneys, Department of Justice, Washington, D. C., for appellee.

Before MAJOR and FINNEGAN, Circuit Judges, and PLATT, District Judge.

FINNEGAN, Circuit Judge.

Relying on § 17 of the Trading with the Enemy Act,[1] plaintiff Attorney General of the United States as successor [2] to the Alien Property Custodian, brought this action to secure a fund of accumulated royalty payments ($21,377.29) in defendant's possession. In the order brought up for review the district judge stated: " * * * defendant * * * conceded to the Court that if this is a valid summary proceeding to enforce a turnover demand for a vested fund, defendant's answer and counterclaims should be stricken and plaintiff should have judgment for the amount claimed * * *." Those pleadings were stricken on plaintiff's motion, judgment [3] was entered for plaintiff, mandating defendant's compliance with plaintiff's Vesting Order No. 3369 and the turnover demand.

Obviously the factual background of this case must be drawn from pleadings, briefs of the parties in both courts and the exhibits. From those materials it appears fairly well undisputed that on December 2, 1933 defendant, LaSalle Steel Company, joined in a patent license agreement with Tubus A. G. of Switzerland by which LaSalle received the right to exploit certain inventions covered by patents and patent applications owned by Tubus. This was an exclusive license concerning the manufacture of certain types of extruded products to which LaSalle was given the right to sub-license. The license was non-exclusive as to all other products. LaSalle committed itself to pay Tubus royalties of $1.25 per ton on products produced under the exclusive license; the royalty rate to be increased under certain circumstances according to the formula contained in the contract.

Tubus was paid $13,750 as advance royalties to be credited against initial production. LaSalle never produced under that contract, but sublicensed Wilcox-Rich Corporation in 1936 and its successor, Eaton Manufacturing Company, to produce products covered by the exclusive license. Wilcox was to pay royalties of $10 per ton, and by the fall of 1945 Eaton had paid $55,000 in royalties.

By vesting Order 3369, as amended, dated March 29, 1944 the Custodian vested "All right, title and interest in and to the patents [subject matter of 1933 agreement] * * * including * * * two-thirds (⅔) of all accrued royalties and two-thirds (⅔) of all damages and profits recoverable at law or in equity from any person, firm, corporation or government for past infringement of said patents." That order was based upon the finding that such property was owned by enemies, Fritz Singer and the heirs of Neumeyer, all residents and nationals of Germany.

The Tubus-LaSalle 1933 contract was terminated in 1950 by the custodian. When the custodian's vesting order issued (March 29, 1944) Tubus had no royalty claims against LaSalle and, such royalties apparently accrued during the years 1948–1950. It is these royalties that plaintiff claimed when he served the turnover demand on defendant in 1952. LaSalle tells us that the custodian made no findings that the royalties were owned by alien enemies and such a finding would be unsupportable since they accumulated after the initial vesting when Tubus had been ousted. But we think the Joint Resolution, dated October 19, 1951, authorized seizure of the fund of $21,377.29:

1. 50 U.S.C.A.Appendix, § 17. Jurisdiction was also invoked under 28 U.S.C. § 1345.

2. By Executive Order No. 9788, 50 U.S. C.A.Appendix, § 6 note (11 F.R. 11981, October 15, 1946) the Attorney General succeeded to the powers and duties of the Alien Property Custodian.

3. Defendant, according to this order, was directed to pay over the funds "without

prejudice, however, to any of defendant's rights to bring suit or institute proceedings for the recovery of said sum after defendant shall have paid the same to plaintiff and without prejudice to any of plaintiff's rights to defend against such a suit or proceeding, and also without prejudice to defendant's right, if any, to appeal from said order and from this order and judgment."

"The state of war declared to exist between the United States and the Government of Germany by the joint resolution of Congress approved December 11, 1941, is hereby terminated and such termination shall take effect on the date of enactment of this resolution: *Provided, however,* That notwithstanding this resolution and any proclamation issued by the President pursuant thereto, any property or interest which prior to January 1, 1947, was subject to vesting or seizure under the provisions of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, or which has heretofore been vested or seized under that Act, including accruals to or proceeds of any such property or interest, shall continue to be subject to the provisions of that Act in the same manner and to the same extent as if this resolution had not been adopted and such proclamation had not been issued. Nothing herein and nothing in such proclamation shall alter the status, as it existed immediately prior hereto, under that Act, of Germany or of any person with respect to any such property or interest". H.J.Res. 289, 65 Stat. 451, 50 U.S.C.A.Appendix preceding section 1.

These royalties, due sometime after December 31, 1946 were accruals stemming from contract rights held by Tubus when the custodian took over the property. Compare: Zittman v. McGrath, 1951, 341 U.S. 446, 71 S.Ct. 832, 95 L.Ed. 1096; Zittman v. McGrath, 1951, 341 U.S. 471, 71 S.Ct. 846, 95 L.Ed. 1112.

We think summary disposition of this matter in the district court was correct and the non-prejudicial reservation for defendant's benefit an equitable course of decision. LaSalle's failure to pay over the funds cleared the way for plaintiff's proceeding below.

There being nothing further deserving discussion in this opinion, the order and judgment appealed is affirmed.

Affirmed.