George C. DIX, Plaintiff,

v.

Herbert BROWNELL, Jr., Attorney General of the United States, as successor to the Alien Property Custodian, Defendant.

Civ. No. 13699.

United States District Court
E. D. New York.

Feb. 19, 1958.

See also 141 F.Supp. 789.

George C. Dix, New York City, for plaintiff, by David S. Kumble, New York City, of counsel.

Cornelius W. Wickersham, Jr., U. S. Atty., E. D. N. Y., Brooklyn, N. Y., by Lloyd Baker, Asst. U. S. Atty., Brightwaters, N. Y., of counsel, and Walter T. Nolte, Dept. of Justice, Office of Alien Property, Washington, D. C., for defendant.

RAYFIEL, District Judge.

The plaintiff, a member of the bar of the State of New York, sues the defendant, as successor to the Alien Property Custodian, pursuant to section 9(a) of the Trading with the Enemy Act (50 U. S.C.A.Appendix, § 9(a)), to obtain title to certain real estate in the State of New Jersey, known as Camp Bergwald.

These are the facts: The German-American Vocational League, Inc., hereinafter called German-American, was incorporated in 1928 under the laws of the State of New York as a membership corporation. It collected funds from its members for the purchase of a camp site for their use. In 1937 the property here involved was purchased. Title was taken in the name of D.A.B. Recreational Resort, Inc., hereinafter referred to as D.A.B., which was organized for that purpose. All of the shares in the corporation were issued to four directors of German-American, as trustees for its members.

The members of German-American agreed that part of the the land was to be set aside for general recreational purposes, and another part was to be divided into one-acre plots, to be leased only to its members, on which they were permitted to erect summer bungalows for their own use. Agreements were entered into between such individual members and D.A.B., which provided that each bungalow owner was to pay a fixed

annual rental to cover his pro-rata share of the taxes assessed on the land, as well as any tax which might be assessed on his bungalow. Some fifteen bungalows were built by individual members, and, in addition, the members of German-American built roads, erected group houses for living accommodations, dammed a stream for swimming, and made other improvements.

On January 6, 1943 the Alien Property Custodian issued Vesting Order No. 626, in which he found that German-American was "controlled by or acting for or on behalf of or as a cloak for a designated enemy country (Germany) or a person within such country, and, therefore, is a national of a designated enemy country (Germany)", and by the terms of said Order he vested all of the outstanding stock of D.A.B., thereafter ousting all of D.A.B.'s officers and electing his own employees as their successors.

On July 8, 1943 he issued Vesting Order No. 1765, in which he found that German-American was "a social and trade union organization, affiliated with Deutches Arbeit Front (German Labor Front), Berlin, Germany," and vested "all property of any nature whatsoever situated in the United States and owned or controlled by, payable or deliverable to, or held on behalf of or on account of or owing to German-American Vocational League, Inc. and the interests therein of any and all of the members of German-American Vocational League, Inc."

After the issuance of said vesting orders the plaintiff, as attorney for two members of German-American, and on behalf of all of its members, filed a notice of claim, dated March 31, 1944, with the Alien Property Custodian, describing the vested property in question as "all property owned or controlled by, or held on behalf of, or owing to German-American Vocational League, Inc., and the interests therein of any and all of the members of German-American Vocational League, Inc." The claim contained a

retainer, signed by thirteen of the bungalow owners, as beneficial owners of shares of stock in D.A.B., and as members of German-American, retaining the plaintiff to act as their attorney in an action or proceeding for the recovery of their property from the Alien Property Custodian.

There followed considerable correspondence between the plaintiff and the Office of Alien Property concerning the claim. The plaintiff, on behalf of those of his clients who owned bungalows, attempted to pay the stipulated annual rentals provided for in their leases with D.A.B., and there was correspondence between him, his clients and the Office of Alien Property concerning the propriety of the acceptance thereof.

In October, 1943, German-American, D.A.B., and eight individuals were indicted in the United States District Court for the District of New Jersey for conspiracy to violate the Foreign Agents Registrations Act of June 8, 1938, as amended (Title 22 U.S.C.A. § 611 et seq.). They were convicted. The conviction was affirmed on appeal, United States v. German-American Vocational League, 3 Cir., 153 F.2d 860 and certiorari was denied, 328 U.S. 833, 66 S.Ct. 976, 90 L.Ed. 1608. The plaintiff participated, as one of counsel for the defendants, in these proceedings. German-American was fined the sum of $5,000 and D.A.B. was fined the sum of $1,000.

The real estate taxes assessed against the property by the Borough of Bloomingdale, County of Passaic, for the years, 1943, 1944, 1945 and 1946 were not paid, and on December 27, 1946 the Collector of Taxes of the said Borough sold the lands involved to the plaintiff, who filed the tax sale certificates in the Register's office of the County of Passaic on January 4, 1947.

Under the New Jersey law the owner of the fee could redeem the property from the lien of said tax sale certificates within two years after the sale thereof, and, in the event of his failure so to do,

the purchaser of such certificates could foreclose the right of redemption (N.J. S.A. 54:5–86).

On September 23, 1950 the plaintiff was advised by the Office of Alien Property that Alfred E. Modarelli of Newark, New Jersey, had been designated as agent to accept service of all papers affecting the property owned by D.A.B. known as Camp Bergwald. On July 1, 1951 the plaintiff commenced an action in the Superior Court of the State of New Jersey, Chancery Division, Passaic County to foreclose the tax sale certificates which he had purchased. The suit named the United States of America and D.A.B., among others, as parties defendant. Service of process on D.A.B. was effected by delivery thereof to the said Alfred E. Modarelli. The bungalow owners who were plaintiff's clients were not named as defendants. On August 8, 1951, while the action was pending, the Attorney General of the United States issued the third vesting order herein, No. 18294. It set forth a complete description of the real estate in question, found that it was the property of D.A.B., and vested it in the Attorney General, subject to recorded liens, encumbrances and other rights, etc.

Thereafter the action was removed to the United States District Court for the District of New Jersey, where it was dismissed as against the United States of America by the decision of Hon. Alfred E. Modarelli, then a United States District Judge. That decision, dated July 21, 1952, held that the United States of America could not be sued without its consent, and that it had not consented to subject itself to the suit to foreclose the said tax sale certificates. It held, further, that there had been a failure to comply with the requirements of the Trading with the Enemy Act (50 U.S. C.A.Appendix, §§ 9(a), 36(a) and (b)). The action was then remanded to the said Superior Court of New Jersey and proceeded to a judgment of foreclosure against the remaining defendants.

On April 18, 1952 the plaintiff filed a notice of claim with the Department of Justice, Office of Alien Property, asserting his ownership of the property by virtue of his purchase of the tax sale certificates. Receipt of the claim was acknowledged by letter dated June 30, 1952.

The plaintiff then commenced this action for a declaration that *he* was the owner of the property in question at the time Vesting Order No. 18294, dated August 8, 1951, went into effect, that the United States of America did not obtain any valid right, title or interest in said property by virtue of said vesting order, and that the defendant should revoke and cancel said order so far as it related to the property in question.

The defendant's answer set forth several defenses, one to the effect that, the property in question being "blocked" or "frozen", the plaintiff was required to obtain a federal license prior to his acquisition of the tax sale certificates, and that his failure to do so rendered his title to the property null and void, all of which is disputed by the plaintiff.

Section 5(b) of the Trading with the Enemy Act, as amended (Title 50 U.S. C.A.Appendix, § 5(b)), provided the authority for the freezing program. Pursuant thereto the President, on April 10, 1940, issued Executive Order 8389, which was subsequently amended (Title 12 U.S.C.A. following Section 95(a)). This Executive Order prohibited certain transactions with designated foreign countries or *nationals* thereof, one of such countries being Germany, unless authorized by licenses issued by the Treasury Department.

Among the prohibited transactions covered by the said Executive Order were those listed in Section 1, subd. E. thereof, which were: "All transfers, withdrawals or exportations of, or dealings in, any evidences of indebtedness or evidences of ownership of property by any person within the United States."

We come, therefore, to this question: were German-American and D.A.B. "nationals", as defined in Section 5, subd. E(ü) of Executive Order 8389, supra,

which reads as follows: "The term 'national' shall include, * * * II any partnership, association, corporation or other organization, organized under the laws of, or which on or since the effective date of this Order had or has had its principal place of business in such foreign country, or which on or since such effective date was or has been controlled by, or a substantial part of the stock, shares, bonds, debentures, notes, drafts, or other securities or obligations of which, was or has been owned or controlled by, directly or indirectly, such foreign country and/or one or more nationals thereof, as herein defined".

That question, in my opinion, must be answered in the affirmative in the light of the decision in United States v. German-American Vocational League, supra, wherein both German-American and D.A.B. were found guilty of conspiring to violate the Foreign Agents Registration Act (Title 22 U.S.C.A. § 611 et seq.). It was implicit, if not expressly stated, in that decision that those corporations were, in fact, foreign agents which had not registered pursuant to the statute. That being so, they would appear to be "nationals" as that word is defined in Sec. 5, subd. E(II), supra. As a matter of fact, the first two vesting orders herein, Numbered 626 and 1790, found that both German-American and D.A.B. were controlled by or acting for or on behalf of a designated enemy country (Germany) or a person within such country and were, therefore, nationals of that country.

The effect of the freezing program, and the necessity for obtaining a license prior to any attempted transfer of "frozen" property, were discussed very fully in the case of Schumacher v. Brownell, 3 Cir., 210 F.2d 14, involving also the plaintiff herein, in which Judge Kalodner stated, at page 18, "Since the attempted transfer of The Kyffhaeuser's blocked account to Schumacher was not authorized by the Treasury, *no interest passed to him.* 'The freezing order of June 14, 1941 (Executive Order No. 8389, as amended) *immobilized the assets covered by its terms so that title to them might not shift from person to person except by license.'* Propper v. Clark, 1949, 337 U.S. 472, 484, 69 S.Ct. 1333, 1340, 93 L.Ed. 1480." (Emphasis supplied.) See also Zittman v. McGrath, 341 U.S. 446, 71 S.Ct. 832, 95 L.Ed. 1096, and Orvis v. Brownell, 345 U.S. 183, 73 S.Ct. 596, 97 L.Ed. 938.

I reject the plaintiff's argument that Exhibits 27 and 32, preclude the necessity of obtaining a license prior to the purchase of the tax sale certificates. Exhibit 27, entitled "Authorization by the Alien Property Custodian of certain transactions" provides for "No transactions without the authorization of the Alien Property Custodian, his delegate or supervisor." Exhibit 32, entitled "Designation of Supervisor for the Alien Property Custodian" provides that the individuals named therein were authorized "to make and to revoke, on behalf of the Alien Property Custodian, authorizations of transactions relating to said property or business enterprise."

The plaintiff having failed to obtain a license to purchase the tax sale certificates, as required by Executive Order 8389, as amended, his title thereto is defective, and judgment is accordingly rendered in favor of the defendant, dismissing the complaint herein.

On the day this decision was to be filed I received a letter from the plaintiff, in which he asked that the case be reopened, so that he might introduce into evidence certain correspondence, including a letter addressed to him by the Office of Alien Property, containing a statement respecting the date of the first vesting of the property here involved. A copy of the plaintiff's letter was apparently sent to the United States Attorney for this District, who forwarded it to the Attorney General of the United States, who then caused a memorandum reply to be made thereto.

Since I have based my decision on the "freeze order", and not the vesting order, it is unnecessary to reopen the case.

Submit proposed findings of fact, conclusions of law and judgment in conformity herewith.