George C. DIX, Plaintiff-Appellant,

v.

William ROGERS, Attorney General of the United States, as Successor to the Alien Property Custodian, Defendant-Appellee.

No. 256, Docket 25344.

United States Court of Appeals Second Circuit.

Argued April 21, 1959.

Decided June 24, 1959.

Thomas B. Wheeler, New Orleans, La., Wheeler & Exnicios, New Orleans, La., Proctors, R. P. Warfield, Pensacola, Fla., Advocate, for appellant.

Richard B. Austin, Jacksonville, Fla., Clyde G. Trammell, Jr., Ross H. Stanton, Jr., Tallahassee, Fla., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and TUTTLE, Circuit Judges.

George C. Dix, appellant pro se.

Cornelius W. Wickersham, Jr., U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y. (Dallas S. Townsend, Asst. Atty. Gen., and George B. Searls, Irwin A. Seibel, and Paul J. Spielberg, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before LUMBARD, Circuit Judge, and GALSTON and ANDERSON, District Judges.

ANDERSON, District Judge.

At the beginning of World War II a New York membership corporation, The German-American Vocational League, Inc., through its directors as trustees for its members, held all of the stock of another New York corporation, D. A. B. Recreational Resorts, Inc., which had purchased and had title to certain real estate, located in the State of New Jersey, known as Camp Bergwald, subject to purchase money mortgages later assigned to the plaintiff-appellant in February, 1945.

On January 6, 1943 the Alien Property Custodian issued Vesting Order No. 626 in which he found that German-American and D. A. B. were nationals of Germany, an enemy country, and that they were acting in this country on behalf of that nation. The order vested all of the outstanding stock of D. A. B. in the Custodian; and he, thereafter, elected his own employees to replace D. A. B.'s officers.

On July 8, 1943 the Alien Property Custodian issued Vesting Order 1765 in which he found that German-American was a social and trade union affiliated with the Berlin Labor Front of Berlin, Germany. This order vested in the Custodian "all property whatsoever, situated in the United States and owned or controlled by, payable or deliverable to, or held on behalf of or on account of or owing to German-American Vocational

League, Inc. and the interests therein of any and all of the members of German-American Vocational League, Inc."

On March 31, 1944 the plaintiff, acting as attorney for thirteen members of German-American, filed a notice of claim with the Alien Property Custodian as to "all property owned or controlled by, or held on behalf of, or owing to German-American Vocational League, Inc. and the interest therein of any and all of the members of German-American Vocational League, Inc." From that time to this the plaintiff, acting individually and as attorney for his clients, has sought to recover the property from the Alien Property Custodian. Subsequent proceedings, including the present case, are a part of the many maneuvers which the plaintiff has adopted in seeking to achieve his objective. Many of the steps taken by the Government have been effected to meet and counter the measures taken by the plaintiff.

Although tenants who had leased portions of the Camp Bergwald property had sent checks to the Custodian in payment of their rent, he either neglected or erroneously refused to cash the checks and apply the proceeds to the payment of taxes assessed on the real estate by the Borough of Bloomingdale for the years 1943 through 1946. On December 27, 1946 the Collector of Taxes of the Borough, after giving the notice required by statute to the parties in interest, sold the property to the plaintiff, who filed the tax sale certificates in the office of the Register of the County of Passaic on January 4, 1947.

Under the New Jersey law the owner of the fee could redeem the property from the lien of said tax sale certificates within two years after the sale thereof, and, in the event of his failure so to do, the purchaser of such certificates could foreclose the right of redemption.[1] On July 1, 1951, after expiration of the two year redemption period required by statute, the plaintiff commenced an action in the Superior Court of New Jersey to foreclose the right of redemption. He named as defendants the United States, D. A. B. and several individuals.

Before proceedings could be had in the state court, the foreclosure action was removed to the United States District Court for the District of New Jersey. At this point the Custodian issued Vesting Order No. 18293. This order fully described the real estate in question, found that it was the property of D. A. B., and vested it in the Attorney General, subject to recorded liens, encumbrances, and other rights.

On July 21, 1952 the foreclosure action was dismissed as against the United States and the case was remanded to the state court, which entered a judgment of foreclosure on April 7, 1953 against D. A. B. and others.

In the present action the plaintiff asserts that the Custodian never acquired title to Camp Bergwald and that he, himself, became the owner of the property through the tax sale and the subsequent foreclosure of the equity holder, D. A. B.

The plaintiff argues that the Custodian did not acquire title to the real property,

1. The two pertinent sections of the New Jersey Statutes Annotated provide:

"§ 54:5-54. Right of redemption by owner or person having interest

"The owner, mortgagee, occupant or other person having an interest in land sold for municipal liens, may redeem it at any time within two years from the date of sale, or at any time thereafter until the right to redeem has been cut off in the manner in this chapter set forth, by paying to the collector, or to the collector of delinquent taxes on lands of the municipality where the land is situate, for the use of the purchaser, his heirs

or assigns, the amount required for redemption as hereinafter set forth."

"§ 54:5-86. Bill to foreclose right to redeem; right continues until barred

"The purchaser, his heirs or assigns, in addition to the remedy provided by article 8 of this chapter (§ 54:5-77 et seq.), may at any time after the expiration of the term of two years, whether notice to redeem has been given or not, file a bill in equity to foreclose the right of redemption. On filing the bill the right to redeem shall exist and continue until barred by the decree of the court of chancery."

as such, by Vesting Orders No. 626 and 1765 which, he says, apply only to the stock of the corporation, D. A. B., and that the Custodian did nothing about the title to the real estate until the Vesting Order No. 18294 of August 8, 1951, which was subsequent to the tax sale of which the Custodian had notice and to which he impliedly consented.

The Government asserts that the plaintiff gained no title to the real estate through the purchase of the tax sale certificates and the foreclosure against D. A. B. two years later because the plaintiff failed to obtain a written authorization from the Custodian prior to his acquisition of the tax sale certificates under the requirements of the Custodian's order of January 29, 1943 expressly directed to D. A. B. and the Custodian's General Order No. 31 promulgated in 1944 under Executive Order No. 9193 (7 F.R. 5205), 50 U.S.C.A.Appendix, § 6 note, pursuant to the Trading with the Enemy Act as amended (40 Stat. 419, 50 U.S.C. A.App. § 1 et seq.).

On January 29, 1943 control of such property or business enterprise was released from the freezing order by the Secretary of the Treasury. Both the specific order of January 29, 1943,[2] under which the Custodian assumed control, and General Order No. 31[3] prohibit all transactions involving any property in which a vested business enterprise has any interest.

■ Certainly by taking over all of the stock of D. A. B., the Custodian, *ipso facto*, took over all of the equity of redemption of D. A. B. in the real estate because it was an asset "in which such business enterprise [D. A. B.] has any interest." It, therefore, seems abundantly clear that the plaintiff's purchase of the tax sale certificates was a prohibited transaction insofar as it was an attempt to affect the interests of the Custodian in the property. Orvis v. Brownell, 1953, 345 U.S. 183, 188, 73 S.Ct. 596, 97 L.Ed. 938. The distinction which the plaintiff attempts to make between the seizure by the Custodian of the shares of stock of D. A. B. and a seizure of the real estate itself, is fully answered by the terms of the order of January 29, 1943

2. The order of Jan. 29, 1943 entitled "Authorization by the Alien Property Custodian of Certain Transactions," reads as follows:
"Re Capital Stock of D.A.B. Recreational Resort, Inc. (subject property) and D.A.B. Recreational Resort, Inc. (business enterprise)
"Address 238 E. 86th St., New York, N.Y.
"To Whom it May Concern:
"Under the authority of the Trading with the Enemy Act, as amended, and Executive Order No. 9095, as amended, and pursuant to law, the Alien Property Custodian has determined to exercise certain power and authority conferred upon him by Section 2 of the said Executive Order, and with respect to the subject property, more particularly described in the above numbered Order of the Alien Property Custodian, has vested the same or has undertaken the supervision thereof or both, as specified therein, and has notified the Secretary of the Treasury in writing to release all control of such property to the Alien Property Custodian.
"Wherefore, all transactions (except those hereinafter specified or hereafter authorized in writing by me or my delegate or supervisor) involving such property, or by, or with, or on behalf of, or pursuant to the direction of, the business enterprise named above, or involving property in which such business enterprise has any interest, are prohibited under authority vested in me by section 5 (b) of the Trading with the Enemy Act, as amended, and by the said Executive Order, and pursuant to law."

3. General Order No. 31 provides:
"§ 503.31 General Order No. 31(a)
"The following transactions are prohibited unless authorized by the Alien Property Custodian, * * *
* * * * *
"(2) All transactions by, or with, or on behalf of, or pursuant to the direction of, any business enterprise of which the Alien Property Custodian has undertaken the supervision, or which he has vested, or assets of or interests in which he has vested, or involving any property, in which such business enterprise has any interest, control of such property or business enterprise having been released by the Secretary of the Treasury pursuant to Executive Order No. 9095, as amended."

and of General Order 31, and becomes no point at all.

The plaintiff claims that there is an implication from the issuance by the Custodian of the third vesting order in 1951, specifically describing the real estate, that the Custodian had no intention of vesting the real estate by the prior vesting orders. The third vesting order was issued by the Custodian after the commencement of the foreclosure action by the plaintiff, and the Government claims the purpose of the order was to make abundantly plain the Custodian's position that neither the plaintiff nor the former owners of the property could recover it from the Custodian without meeting the test of § 9(a) of the Act, which requires a former owner to prove the nature of his interest and his freedom from enemy taint. Cf. Clark v. Uebersee Finanz-Korp., 1947, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 80.

In our view of the case this attempt by the Custodian to solidify his position was unnecessary. Whether the Custodian in so many words vested the "res," i.e. exercised the power to take actual possession, in the first vesting order is an argument over labels. Even though it may be said that the "res" was not vested until 1951, he vested in himself all of the legal interests which were in the title owner, D. A. B., including the right to possession of the property, by the first vesting order, and, for the purposes of this case, that is all that was necessary.

■ There is no dispute that the plaintiff failed to procure the required written authorization. The Government argues that the effect of this failure was to prohibit the plaintiff from purchasing the tax certificate with the result that, having wrongfully done so, he can now neither claim any of the Custodian's ownership interests in the land nor assert that he has a lien on the property for the taxes paid. We agree that the plaintiff was barred from using the certificates as a predicate for state court action to foreclose the holder of the equity of redemption because that holder was the United States. But it is going too far to say that the prohibition worked a complete forfeiture of the money which the plaintiff paid for the taxes. In the first place it was not intended by Congress that the portion of the Trading with the Enemy Act, with which we are concerned, would deprive the states of the power to tax property vested in the Custodian, 50 U.S.C.A.Appendix, § 24; House Report No. 2398, 79th Cong. 2d Sess., 1946 U.S. Code, Cong.Serv. p. 1467; and in the second place no question has been raised as to the right of the Borough to assess the Camp Bergwald property. Whatever lien or other rights the plaintiff may have acquired by the purchase of the tax sale certificates is a matter of state law, and it is not required, for the purpose of the decision in this case, that the nature of those rights be specifically described. It is enough to say that whatever they are, they cannot be enforced in any way which would affect the ownership interests of the United States. This does not mean that the plaintiff is utterly divested of those rights; only that he cannot invoke a remedy in attempting to exercise them which would prejudice the rights of the Custodian in the property. The Federal law will oust the State law only to the extent necessary to effectuate the purpose of the Federal Act; otherwise the state law remains. Zittman v. McGrath, 1951, 341 U.S. 446, 71 S.Ct. 832, 95 L.Ed. 1096; Lyon v. Singer, 1950, 339 U.S. 841, 70 S.Ct. 903, 94 L.Ed. 1323; Propper v. Clark, 1949, 337 U.S. 472, 485, 69 S.Ct. 1333, 93 L.Ed. 1480; Orvis v. Brownell, 1953, 345 U.S. 183, 188, 73 S.Ct. 596, 97 L.Ed. 938, dissenting opinion of Douglas, J., at page 191 of 345 U.S., at page 600.

■ The plaintiff's claim that the Custodian consented to the purchase of the tax certificates and his assertion of a waiver by the Custodian are without merit. The plaintiff seeks support from the fact that the Custodian did not enter and defend the state court action in which the plaintiff claims to have foreclosed the equity of redemption of D. A. B., even though the Custodian had notice of the action, but there is no reason why

the Custodian should have done so. The nub of the matter is that the plaintiff, by failing to get the written authorization, acquired nothing more than a lien for the amount he paid for the tax arrears. Section 9(a) of the Trading with the Enemy Act is the only route by which a return of the property may be sought and then only by the former owner, D. A. B., or its grantee through an authorized conveyance. The plaintiff could not acquire by a prohibited transaction any interest in the real estate which would qualify him to institute a suit under § 9(a). Orvis v. Brownell, supra; Propper v. Clark, supra; Zittman v. McGrath, 1951, 341 U.S. 471, 71 S.Ct. 846, 95 L.Ed. 1112.

Having thus gained no legitimate status as a party in interest for a § 9(a) suit, he obviously did not acquire such status through the foreclosure proceedings in the state court. The plaintiff's efforts to foreclose the interest of the United States, i.e. the interest in the real estate held by the Custodian, were ineffective. While the foreclosure action was in the Federal court, the United States was dismissed as a party defendant on the valid ground that the United States could not be made subject to a suit to foreclose a tax sale certificate lien under the laws of New Jersey where it had not given its consent and where no judicial sale was to be held. See 28 U.S. C. § 2410. Any proposal that thereafter the foreclosure could proceed in the state court and a judgment therein could be entered divesting the United States of its interests in this property is untenable.

While only the third vesting order, specifically describing the real property, was recorded in the land records of Passaic and Morris Counties in New Jersey, the plaintiff was fully aware of the first two vesting orders from the time they were issued. We are not, therefore, concerned with the interests of a party whose only notice was derived from the land records.

Although we reach the same result as did the District Court, we base the deci-sion on the vesting orders rather than on the freezing order, as was done in the court below, because by the terms of the Authorization of January 29, 1943 and General Order 31, the property was released from freezing when vesting occurred. Because of its reliance on the freezing order the District Court denied a motion for rehearing on issues relating to vesting. An examination of the offer of proof submitted by the plaintiff in connection with that motion discloses nothing which would alter our decision in this case and no rehearing is called for.

The judgment of the District Court is affirmed.